# IN THE SUPREME COURT OF CALIFORNIA

In re MOHAMMAD MOHAMMAD
on Habeas Corpus.

S259999

Second Appellate District, Division Five
B295152

Los Angeles County Superior Court
BH011959

_____

January 3, 2022

Chief Justice Cantil-Sakauye authored the opinion of the
Court, in which Justices Corrigan, Liu, Kruger, Groban,
Jenkins, and Levy* concurred.

Justice Liu filed a concurring opinion in which Justice Kruger
concurred.

_____

———————————————————

\* Associate Justice of the Court of Appeal, Fifth Appellate
District, assigned by the Chief Justice pursuant to article VI,
section 6 of the California Constitution.

In re MOHAMMAD

S259999

Opinion of the Court by Cantil-Sakauye, C. J.

This case asks whether Proposition 57, The Public Safety and Rehabilitation Act of 2016, requires California's Department of Corrections and Rehabilitation (the Department) to provide early parole consideration to individuals currently serving a term of incarceration for a violent felony.

Petitioner Mohammad Mohammad was incarcerated after having been convicted of nine violent felony counts and six nonviolent felony counts. The trial court ordered all terms to be served consecutively. After petitioner's conviction, the electorate approved Proposition 57 in November 2016, which added section 32 to article I of the California Constitution to provide, in relevant part, that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1).)[1] The ballot initiative also directed the Department to "adopt regulations in furtherance of these provisions" and instructed the Secretary of the Department to "certify that these

---

[1] Article I, subdivisions 32(a), 32(a)(1), 32(a)(1)(A), and 32(b) of the California Constitution are referred to in this opinion as "article I, section 32(a)," "article I, section 32(a)(1)," "article I, section 32(a)(1)(A)," and "article I, section 32(b)."

regulations protect and enhance public safety." (Art. I, § 32, subd. (b).)

The Department subsequently adopted regulations implementing early parole consideration under article I, section 32.[2] Those regulations exclude from nonviolent offender early parole consideration any inmate who "is currently serving a term of incarceration for a 'violent felony[.]' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5).)[3] The regulations state that a " '[v]iolent felony' is a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code." (*Id.*, § 3490, subd. (c).)

Consistent with those regulations, the Department determined petitioner was ineligible for nonviolent offender early parole consideration because he was serving a term of incarceration for a violent felony. Petitioner challenged that determination, and the Court of Appeal granted relief, holding that the language of article I, section 32(a) requires early parole consideration for any inmate convicted of a nonviolent felony even when that inmate was also convicted of a violent felony. (*In re Mohammad* (2019) 42 Cal.App.5th 719, 727 (*Mohammad*).)

---

[2] The Department refers to early parole consideration under article I, section 32 as "nonviolent offender parole review." (California Department of Corrections and Rehabilitation, *Nonviolent Offender Parole Review Process for Determinately-Sentenced Inmates* <https://www.cdcr.ca.gov/bph/nvopr-overview/> [as of Dec. 28, 2021].) All internet citations in this opinion are archived by year, docket number, and case name at <http://courts.ca.gov/38324.htm>.

[3] Further undesignated references to the California Code of Regulations are to title 15 unless otherwise noted.

We granted review to decide the validity of the Department's regulation prohibiting early parole consideration under the Proposition 57 scheme for inmates "currently serving a term of incarceration for a 'violent felony.' " (Cal. Code Regs., § 3490, subd. (a)(5).) While the matter was pending in this court, four other appellate courts disagreed with *Mohammad* and concluded the Department's regulations properly excluded from early parole consideration inmates currently serving a term of incarceration for a violent felony offense.[4]

We conclude that the Department acted within the authority provided by article I, section 32(b) when it adopted the regulation at issue here. In reaching this conclusion, we find the constitutional text is ambiguous concerning the application of article I, section 32(a) to an inmate like petitioner who is currently serving a term of incarceration for a violent felony offense. Considering the text together with the materials presented to the voters, we hold that the Department's approach is reasonably necessary to effectuate the purpose of Proposition 57. We therefore agree with the majority of the appellate courts, and reverse the decision of the Court of Appeal below.

---

[4] We granted review in each of those four matters and deferred further action pending consideration and disposition of the issue before us in this case. (*In re Guice* (2021) 66 Cal.App.5th 933, 937, review granted Sept. 29, 2021, S270524; *In re Ontiveros* (2021) 65 Cal.App.5th 899, 902–903, review granted Aug. 25, 2021, S269832; *In re Viehmeyer* (2021) 62 Cal.App.5th 973, 984–985, review granted June 30, 2021, S268660; *In re Douglas* (2021) 62 Cal.App.5th 726, 729, review granted June 16, 2021, S268570.)

## I. FACTS AND PROCEDURAL HISTORY

### A. The Underlying Conviction

In 2012, petitioner pleaded no contest to nine counts of second degree robbery (Pen. Code, § 211) and six counts of receiving stolen property (*id.*, § 496, subd. (a)). The trial court designated one count of receiving stolen property to be the principal term and ordered the remaining counts to run consecutively. Petitioner was sentenced to 29 years in prison — three years for the principal term of receiving stolen property, eight months for each of the other counts of receiving stolen property, one year for each of the nine counts of robbery, and a total of 13 years eight months for gang enhancements attached to six counts (*id.*, § 186.22, subds. (b)(1)(A), (b)(1)(C)).[5] Petitioner did not appeal.

### B. The Petition for Writ of Habeas Corpus and the Court of Appeal Opinion

The electorate approved Proposition 57 in 2016. Petitioner subsequently filed a request with the Department asking for early parole consideration. He asserted that Proposition 57 requires early parole consideration for inmates who have completed the full term for a primary offense when that offense is nonviolent. He noted that the trial court in his case designated as the principal term one count of receiving stolen property, and that receiving stolen property is not defined as a violent felony under Penal Code section 667.5, subdivision (c). The Department denied petitioner's request. Petitioner

---

[5] The principal term is "the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements." (Pen. Code, § 1170.1, subd. (a).)

filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court. The superior court denied the petition in November 2018, agreeing with the Department.

In January 2019, petitioner sought habeas corpus relief in the Court of Appeal. That court ultimately held in a published opinion that the Department's regulations improperly excluded petitioner from early parole consideration. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 729.) The court focused on the language of the constitutional provision establishing parole consideration for " '[a]ny person convicted of a nonviolent felony offense' upon completion of 'the full term of his or her primary offense.' " (*Id.* at p. 726, quoting art. I, § 32(a)(1).) This language, the court held, contains the sole requirement for early parole consideration under Proposition 57 — conviction of a nonviolent felony. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 726.) Early parole consideration is therefore required, according to the Court of Appeal, "so long as [the inmate] commits 'a' single nonviolent felony offense — even if that offense is not his or her only offense." (*Ibid.*)

In support of its conclusion, the court pointed to the constitutional language defining the " 'full term for the primary offense' as 'the longest term of imprisonment imposed by the court for any offense, *excluding the imposition of* an enhancement, [*a*] *consecutive sentence*, or [*an*] alternative sentence.' " (*Mohammad*, *supra*, 42 Cal.App.5th at p. 726, quoting art. I, § 32(a)(1)(A).) Under this provision, the court asserted, "an inmate who is 'convicted of a nonviolent felony offense' not only remains eligible if he or she is sentenced to a consecutive sentence, but in fact, becomes eligible for an early parole hearing *prior to* serving that consecutive sentence."

(*Mohammad*, *supra*, 42 Cal.App.5th at p. 727, quoting art. I, § 32(a)(1).)

The court rejected the Department's regulations as incompatible with the language of article I, section 32(a)(1). (*Mohammad*, *supra*, 42 Cal.App.5th at pp. 726–727.) The court noted that those regulations "dictate a different result, but only by impermissibly defining and limiting the universe of eligible inmates to 'nonviolent *offenders*' — a term that does not appear anywhere in [article I,] section 32(a)(1)." (*Id.* at p. 726, quoting Cal. Code Regs., § 3491.) The court declined to consider the ballot materials presented to the voters, determining that review of extrinsic sources was unnecessary because the language of the constitutional provision itself was unambiguous. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 727, citing *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444–445.)

The Court of Appeal acknowledged that the Department's argument "has some intuitive appeal. It cannot be, the argument goes, that voters intended a defendant who is convicted of more crimes, i.e., both violent and nonviolent felonies, to be eligible for early parole consideration while a defendant convicted of fewer crimes, i.e., the same violent felony but no nonviolent felonies, is not." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 727.) But this "intuitive appeal" is overcome and that interpretation foreclosed, the court determined, by the language of the provision. (*Id.* at pp. 727–728.)

The court also noted that petitioner's case "is an unusual one" in that the trial court designated a nonviolent felony as petitioner's principal term, while "[o]ften" an individual's most

serious violent felony is deemed the principal term. (*Mohammad, supra,* 42 Cal.App.5th at p. 728.) The court suggested that these facts — "when an inmate becomes eligible for early parole consideration before serving time for any of his or her violent felony offenses" — "will not frequently arise." (*Ibid.*, fn. omitted.)

We granted the Attorney General's petition for review. After the filing of our opinion in *In re Gadlin* (2020) 10 Cal.5th 915 (*Gadlin*), we granted petitioner's motion to file supplemental briefing to address *Gadlin* as well as Proposition 20, a ballot initiative that was rejected by the voters in November 2020.

## II. DISCUSSION

### A. Proposition 57

We recently described the history of Proposition 57 in *Gadlin.* We noted there that the California Legislature and the electorate have taken steps to decrease the California prison population, including the electorate's approval of Proposition 57 in November 2016. (*Gadlin, supra,* 10 Cal.5th at pp. 922–923, citing Cal. Sect. of State, Statement of Vote Summary Pages (2016) p. 12 <https://elections.cdn.sos.ca.gov/sov/2016-general/sov/06-sov-summary.pdf> [as of Dec. 28, 2021].) The initiative, in relevant part, added section 32 to article I of the California Constitution, which provides: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Art. I, § 32(a)(1).) Article I, section 32 further specifies that "the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an

enhancement, consecutive sentence, or alternative sentence" (*id.*, subd. (a)(1)(A)),[6] directs the Department to "adopt regulations in furtherance of these provisions" (*id.*, § 32(b)), and instructs the Secretary of the Department to "certify that these regulations protect and enhance public safety" (*ibid.*).

We described the purposes of the constitutional provision in *Gadlin*: " '[T]o enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law.' " (*Gadlin, supra,* 10 Cal.5th at p. 923, quoting art. I, § 32(a).) Uncodified portions of Proposition 57 further identify the initiative's purpose and intent, in relevant part, as follows: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.) The initiative further states that the "act shall be liberally construed to effectuate its purposes." (*Id.*, § 9, p. 146.)

## B. The Department's Regulations

In March 2017, the Department proposed emergency regulations to implement Proposition 57. As we described in *Gadlin*, those emergency regulations were replaced by final

---

[6] This definition of an individual's "primary offense" for purposes of early parole consideration renders the primary offense distinct from an individual's principal term. (See art. I, § 32(a)(1).) As noted above, the principal term is "the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements." (Pen. Code, § 1170.1, subd. (a).)

regulations in May 2018 and subsequently amended in response to various appellate opinions. (*Gadlin*, *supra*, 10 Cal.5th at pp. 924–925.) The regulations define a "determinately-sentenced nonviolent offender" as an inmate who is *not*, among other things, "currently serving a term of incarceration for a 'violent felony.' " (Cal. Code Regs., § 3490, subd. (a)(5).) Further, the regulations define a "violent felony" for purposes of early parole consideration as "a crime or enhancement" listed in Penal Code section 667.5, subdivision (c). (*Id.*, § 3490, subd. (c).)

Other provisions of the regulations exclude from early parole consideration individuals "currently serving a determinate term prior to beginning a term of life with the possibility of parole or prior to beginning a term for an in-prison offense that is a 'violent felony' " (Cal. Code Regs., § 3490, subd. (a)(4)) and those "currently serving a term of incarceration for a nonviolent felony offense after completing a concurrent determinate term for a 'violent felony' " (*id.*, § 3490, subd. (a)(6)). Additionally, the regulations detail the eligibility criteria for both determinately-sentenced offenders (see *id.*, §§ 3490–3491) and indeterminately-sentenced offenders (see *id.*, §§ 3495–3496). Like the regulatory provision defining a "determinately-sentenced nonviolent offender" (*id.*, § 3490, subd. (a)), the regulations define an "indeterminately-sentenced nonviolent offender" as an inmate who is not, among other things, "currently serving a term of life with the possibility of parole for a 'violent felony' " (*id.*, § 3495, subd. (a)(3)). Because petitioner's exclusion from early parole consideration is governed solely by section 3490, subdivision (a)(5) of the California Code of Regulations, however, we decline to address in this case the validity of any other portion of the regulations.

### C. Standard of Review and Principles of Statutory Interpretation

We apply well settled principles to determine the validity of regulations promulgated by a state agency. As in *Gadlin*, we acknowledge that although these precepts "have traditionally been applied in the context of a state agency's regulations addressing statutes enacted by the Legislature (*Gadlin, supra*, 10 Cal.5th at p. 925, citing *Morris v. Williams* (1967) 67 Cal.2d 733, 748 (*Morris*)), the parties here do not assert that "the relevant principles of interpretation differ when an agency has promulgated regulations to give force to a constitutional provision, rather than a statutory provision" (*id.* at p. 926).

In undertaking this analysis, we ask whether the regulation is " 'consistent and not in conflict with' " the constitutional provision that authorizes it (see *Morris, supra*, 67 Cal.2d at p. 748, italics omitted, quoting Gov. Code, former § 11374[7]) and whether the regulation is reasonably necessary to effectuate the purpose of the authorizing law (*Morris, supra*, 67 Cal.2d at p. 749; see also Gov. Code, § 11342.2 ["Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute"]; *Woods v. Superior Court* (1981) 28 Cal.3d 668, 679 (*Woods*)). Our task " ' "is to decide whether the [agency] reasonably interpreted the legislative mandate." [Citation.] ' " (*Woods, supra*, 28 Cal.3d at p. 679,

---

[7] Former section 11374 of the Government Code was renumbered as section 11342.2. (Stats. 1979, ch. 567, §§ 1–2.)

quoting *Credit Ins. Gen. Agents Assn. v. Payne* (1976) 16 Cal.3d 651, 657.) In doing so, we presume the validity of the regulation (*Assn. of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 389); the burden lies with the party challenging the regulation to show its invalidity (*Payne, supra,* 16 Cal.3d at p. 657). Because this inquiry poses a question of law (see *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415), we review the Court of Appeal's decision de novo. (See *People v. Gonzales* (2018) 6 Cal.5th 44, 49, citing *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.)

Our "primary concern" in construing a constitutional provision enacted through voter initiative is "giving effect to the intended purpose of the provisions at issue" (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933) by applying "the same principles that govern statutory construction" (*People v. Rizo* (2000) 22 Cal.4th 681, 685, citing *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276). In doing so, we look to the text of the constitutional provision at issue and, as appropriate, extrinsic sources such as an initiative's ballot materials. (See *City of Upland, supra,* 3 Cal.5th at pp. 933–934.) Although we are obligated to strike down regulations that alter or amend the constitutional provision or its scope (*Woods, supra,* 28 Cal.3d at p. 679, citing *Morris, supra,* 67 Cal.2d at p. 748), our role is not to examine the wisdom of the regulations but their legality (*Woods, supra,* 28 Cal.3d at p. 679, quoting *Morris, supra,* 67 Cal.2d at p. 737). "Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise." (*Woods, supra,* 28 Cal.3d at p. 679.)

### D. The Language of Proposition 57

We begin our analysis with the language of the constitutional provisions enacted by Proposition 57. Article I, section 32(a)(1) states: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." Article I, section 32(a)(1)(A) defines the "full term for the primary offense" as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." And article I, section 32(b) provides that the Department shall "adopt regulations in furtherance of these provisions." The question here is whether these constitutional provisions require the Department to provide early parole consideration when the inmate is currently serving a term for a violent felony.

As noted, the Court of Appeal below concluded that the voters intended to extend early parole consideration to an inmate convicted of "a" nonviolent felony, regardless of whether that inmate was currently serving a term for a violent felony. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 725; see *id*. at pp. 725–726.) The court declined to consider the ballot materials presented to the voters, concluding "[t]here is nothing ambiguous about what [article I,] section 32(a)(1) means in this case . . . ." (*Id*. at p. 727.) The Department asserts, on the other hand, that the constitutional provisions are ambiguous and require consideration of the ballot materials to determine the intent of the electorate.

We first examine whether the constitutional language is ambiguous; if the text "is unambiguous and provides a clear

answer, we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.) When a constitutional provision is " 'clear and unambiguous' " it should be given its ordinary meaning. (*People v. Valencia* (2017) 3 Cal.5th 347, 357, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) "The words of the statute must be construed in context, keeping in mind the statutory purpose . . . ." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (*Dyna-Med*).) If the text is ambiguous, it is appropriate to examine the ballot materials before the voters. (*People v. Valencia* (2017) 3 Cal.5th 347, 364, citing *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 905.)

Article I, section 32(a)(1) establishes early parole consideration for "[a]ny person convicted of a nonviolent felony offense . . . after completing the full term for his or her primary offense." This language does not expressly address whether inmates with nonviolent felony convictions who are currently serving a prison term for a violent felony are eligible for early parole consideration. The parties and appellate courts have offered various interpretations of this provision.

The Court of Appeal concluded the language is clear and unambiguous: An inmate convicted of "a" nonviolent felony would be eligible for early parole consideration after completing the full term of the primary offense. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 725; see *id.* at pp. 725–726.) The court stated that the requirement that an inmate be convicted of "a" nonviolent felony "takes the singular form, which indicates it applies to an inmate so long as he or she commits 'a' single nonviolent felony offense — even if that offense is not his or her only offense." (*Id.* at p. 726.) The court also determined the inclusion of the term "primary offense" in the constitutional

provision further indicates the electorate would have understood that inmates "might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses." (*Ibid.*) Moreover, the court noted that the constitutional definition of the "full term for the primary offense" specifically references (and excludes) the imposition of a consecutive sentence. (*Ibid.*)

Considered alone and outside of the context of the entire initiative, the Court of Appeal's interpretation is a plausible reading of the language that is, on its face, consistent with article I, section 32(a).[8] But language that seems plain when considered in isolation may be ambiguous when examined within the context of the scheme it implements. (See, e.g., *Small v. United States* (2005) 544 U.S. 385, 388 [finding phrase "convicted in any court" to be ambiguous when determining whether statute included a conviction in a foreign court], citing *Nixon v. Missouri Municipal League* (2004) 541 U.S. 125, 132 [" 'any' " can mean "different things depending upon the setting"]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [noting the term "convicted" "may have different meanings in

---

[8] Another Court of Appeal reached the same conclusion, finding that the language of section 32(a)(1) "support[s] a conclusion that an inmate is eligible for early parole consideration after completing his or her primary offense if the inmate was convicted of a nonviolent offense, even if the term for that nonviolent offense was not designated as the primary offense, and even if the inmate was also convicted of one or more violent offenses . . . ." (*In re Douglas*, *supra*, 62 Cal.App.5th at p. 731.) Ultimately, however, that appellate court concluded that interpreting the initiative in such a manner would lead to absurd results not intended by the electorate and thus declined to do so. (*Id.* at pp. 732–734.)

different contexts, or even different meanings within a single statute"].)

We have found similar language to be ambiguous.  (*In re Reeves* (2005) 35 Cal.4th 765 (*Reeves*).)  In *Reeves*, we considered a statute that provided " 'any person who is convicted of a [violent] felony offense . . . shall accrue no more than 15 percent of worktime credit . . . .' "  (*Id.* at p. 768, fn. omitted, quoting Pen. Code, § 2933.1, subd. (a).)  The issue in *Reeves* was whether an inmate convicted of both nonviolent and violent felonies was subject to the 15 percent credit limit.  (*Id.* at p. 770.)  We noted that the "seemingly plain language" of the statute was subject to various possible interpretations based on the term " 'is convicted.' "  (*Id.* at p. 770; see *id.* at p. 771 [" 'any person who is convicted of a [violent] felony offense' [citation], might conceivably refer simply to a point of historical fact"].)  We therefore determined that "the conclusion that [the statute] is ambiguous, at least as applied to the facts of this case, seems inescapable."  (*Id.* at pp. 770–771.)

The constitutional provision here contains language nearly identical to the statutory language we considered in *Reeves*.  Article I, section 32(a) does not directly state whether an inmate like petitioner — who has nonviolent felony convictions but is currently serving a term of incarceration for a violent felony — would be eligible for early parole consideration.  Like in *Reeves*, it "seems inescapable" that the language is ambiguous as it applies to inmates like petitioner.  (*Reeves*, *supra*, 35 Cal.4th at pp. 770–771.)

Further, the appellate courts and the parties here advance various interpretations of article I, section 32(a) that reflect ambiguities in the constitutional language.  Petitioner, for

example, asserts that inmates convicted of a nonviolent felony as their primary offense are eligible for early parole consideration "once they have served the full term for *that* offense." (Italics added.) In other words, under petitioner's view, early parole consideration is required when an inmate's primary offense is a nonviolent felony even if the inmate is currently serving a term for a violent felony, but not when the inmate's primary offense is a violent felony and the inmate is currently serving a term for a nonviolent felony.[9]

A concurring opinion in another appellate decision provides a different approach: When an inmate has been convicted of a violent felony offense that is deemed the primary offense and also has been convicted of a nonviolent felony offense, the inmate is eligible for nonviolent offender parole consideration after serving the sentence for the violent felony. (*In re Douglas*, *supra*, 62 Cal.App.5th at p. 735 (conc. opn. of Robie, Acting P. J.).) The Department asserts the language permits the exclusion of inmates who have nonviolent felony

---

[9] Petitioner asserts this approach is consistent with the approach adopted by the Court of Appeal below. We disagree. Although the court's discussion took place in the context of evaluating petitioner's eligibility for early parole consideration (and petitioner's primary offense was a nonviolent felony), no language in the Court of Appeal's opinion limited its holding to inmates whose primary offense was a nonviolent felony. Indeed, the Court of Appeal's language was quite broad: "under [article I, section 32(a) and article I, section 32(a)(1)(A)], an inmate who is serving an aggregate sentence for more than one conviction will be eligible for an early parole hearing if one of those convictions was for 'a' nonviolent felony offense." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 726.)

convictions and are currently serving a term of incarceration for a violent felony offense.

The language of article I, section 32(a) alone does not tell us which of these interpretations is correct. That there are several plausible interpretations of the constitutional language indicates the meaning of the text is ambiguous. (See *People v. Gonzales* (2018) 6 Cal.5th 44, 52 [considering ballot materials when statutory language "could have several possible interpretations"]; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 ["there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning"], citing *People v. Leal* (2004) 33 Cal.4th 999, 1007, *People v. Gardeley* (1996) 14 Cal.4th 605, 621; see also *In re Douglas*, *supra*, 62 Cal.App.5th at p. 735 (conc. opn. of Robie, Acting P. J.) ["It is clear section 32(a)(1) is ambiguous given the divergence of appellate opinions as to its meaning"].)

Petitioner contends that our recent opinion in *Gadlin* compels a contrary conclusion. But in *Gadlin*, we found the language of article I, section 32(a)(1) to be unambiguous in other respects. (*Gadlin*, *supra*, 10 Cal.5th at p. 935.) There, we were asked to decide whether the Department could exclude from early parole consideration all inmates convicted of a sex offense requiring registration under Penal Code section 290, even when the Department's regulations defined some of those inmates as nonviolent offenders. (*Gadlin*, *supra*, 10 Cal.5th at pp. 919–920.) We held it could not in light of the language of article I, section 32(a)(1), which provides that "[a]ny person convicted of a nonviolent felony offense" shall be eligible for early parole consideration. (*Gadlin*, *supra*, 10 Cal.5th at pp. 932–933.) Indeed, in so holding, we stated that "article I, section 32(a)(1),

although *containing some terms that might be ambiguous in other respects*, is not ambiguous concerning its scope regarding offenders who were previously convicted of a registerable sex offense or who are currently convicted of a registerable sex offense that the Department has itself defined as nonviolent." (*Gadlin*, *supra*, 10 Cal.5th at p. 932, italics added.) Our holding was thus limited to the specific question before us in that case, and we acknowledged that the language of the constitutional provision might be ambiguous in other respects. Thus, *Gadlin* does not compel a conclusion that the constitutional provision is unambiguous as it relates to the distinct question before us now. We disapprove of the following opinions to the extent they have held the language of article I, section 32(a) is unambiguous in this context: *In re Ontiveros* (2021) 65 Cal.App.5th 899, 905 ["We accept, for purposes of our opinion, that the text of Proposition 57 is clear and unambiguous"]; *In re Douglas* (2021) 62 Cal.App.5th 726, 731.

### E. Consideration of the Ballot Materials

Because the constitutional text provides " 'no definitive answer' " to the question before us (*People v. Hazelton* (1996) 14 Cal.4th 101, 105, quoting *People v. Coronado* (1995) 12 Cal.4th 145, 151), we consider the materials that were before the voters. (*People v. Valencia*, *supra*, 3 Cal.5th at p. 364, citing *Robert L. v. Superior Court*, *supra*, 30 Cal.4th at p. 905.)

#### 1. The ballot materials presented to the voters

The voters were provided ballot materials that consisted of the official title and summary prepared by the Attorney

General, the analysis by the Legislative Analyst, and the arguments in favor of and against the proposition.[10]

The official title and summary described the relevant provisions of Proposition 57 as follows: "Allows parole consideration for persons convicted of nonviolent felonies, upon completion of prison term for their primary offense as defined. [¶] . . . [¶] Requires Department of Corrections and Rehabilitation to adopt regulations to implement new parole and sentence credit provisions and certify they enhance public safety." (Voter Information Guide, Gen. Elec., *supra*, Official Title and Summary, p. 54.)

The analysis by the Legislative Analyst generally summarized California's then-existing sentencing and parole consideration scheme, and described the changes to the parole system that would result were Proposition 57 to be adopted. The analysis described the proposed parole scheme as "parole consideration for nonviolent offenders" and stated that the initiative "changes the State Constitution to make individuals who are convicted of 'nonviolent felony' offenses eligible for parole consideration after serving the full prison term for their primary offense." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56.) The analysis noted that "[a]lthough the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent."

---

[10] The Arguments included an argument in favor of the initiative by the proponents followed by a rebuttal by the opponents, and an argument against the initiative by the opponents followed by a rebuttal by the proponents.

(*Ibid.*)  Based on that assumption, the analysis estimated that, "[a]s of September 2015, there were about 30,000 individuals in state prison who would be affected by the parole consideration provisions of the measure."  (*Ibid.*)  And the analysis estimated that eligible inmates "currently serve about two years in prison before being considered for parole and/or released" but under the initiative "would serve around one and one-half years in prison before being considered for parole and/or released."  (*Ibid.*)

Finally, the arguments in favor of and against the initiative were presented to the voters.  The proponents urged that Proposition 57 would allow "parole consideration for people with non-violent convictions who complete the full prison term for their primary offense." (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58.)  The proponents did not address whether individuals with nonviolent felony convictions who are currently serving a term of incarceration for a violent felony would be eligible for early parole consideration.

The opponents' rebuttal and argument against Proposition 57 asserted that the initiative would allow parole consideration for "VIOLENT CRIMINALS." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58.)  The opponents claimed the measure was "poorly drafted" and would allow for parole consideration for various crimes allegedly categorized by Proposition 57 as "non-violent." (*Id.*, p. 59.) The opponents asserted that if the measure passed "16,000 dangerous criminals, including those previously convicted of murder and rape, would be eligible for early release." (*Id.*, p. 59, italics omitted.)  The opponents did not address whether individuals with nonviolent felony convictions who are currently serving a term of incarceration for a violent felony would be eligible for early parole consideration.

The proponents' rebuttal responded by stating that the initiative would not authorize parole for violent offenders, and cited *Brown v. Superior Court* (2016) 62 Cal.4th 335 for the position that Proposition 57 would apply " '*only to prisoners convicted of non-violent felonies.*' " (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59, quoting *Brown v. Superior Court*, *supra*, 63 Cal.4th at p. 352.) The proponents emphasized, too, that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.)

### 2. Analysis

The Department contends the ballot materials reveal that the voters intended to exclude any inmate currently serving a term for a violent felony from early parole consideration, regardless of whether such an inmate has also been convicted of a nonviolent felony. The Department stresses that the Legislative Analyst stated that the initiative provided for "parole consideration for nonviolent offenders." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56.) The Department also emphasizes that the rebuttal to the arguments opposing Proposition 57 reiterated that the initiative "Does NOT authorize parole for violent offenders" and that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.)[11]

---

[11] In its briefing before this court, the Department also asserted that the number of inmates eligible for early parole

The Department further contends that even if it was not compelled to exclude from early parole consideration inmates currently serving a term of incarceration for a violent felony, it acted within its discretion to do so. In support of this position, the Department points to article I, section 32(b), which directs the Department to "adopt regulations in furtherance of [the constitutional] provisions . . . ." (Art. I, § 32(b).) The exclusion of inmates currently serving a term for a violent felony from early parole consideration, the Department asserts, reflects its reasoned consideration of the policy and public safety considerations vested in it by article I, section 32(b), and aligns with the intent of the voters as reflected by the ballot materials.

We agree that the Department acted within the authority granted by article I, section 32(b) when it promulgated section

---

consideration under the Court of Appeal's approach — inmates convicted only of nonviolent felonies and inmates convicted of both nonviolent and violent felonies — constituted approximately 96 percent of the prison population in 2019. The Department contrasted this number with the Legislative Analyst's estimate that 30,000 inmates would receive early parole consideration under the initiative.

Prior to oral argument, however, the Department discovered its statistics were erroneous and withdrew its arguments related to those statistics. Following oral argument, the Department submitted additional data regarding the inmate population but did not purport to rely on the new data or to otherwise reassert its original argument. Although such data may be relevant to interpreting the voters' intent in some contexts, we decline to consider it here given the Attorney General's withdrawal of the argument on this point.

3490, subdivision (a)(5) of the California Code of Regulations.[12] We reach this conclusion based on our consideration of the constitutional text, the ballot materials, the stated purposes of the initiative, and the Department's discretion to promulgate regulations under the Constitution. We hold that the Department's regulation is consistent with article I, section 32, and is reasonably necessary to effectuate the purpose of Proposition 57. (See *Morris*, *supra*, 67 Cal.2d at pp. 748–749.)

Neither the language of the constitutional provision nor the materials presented to the voters explicitly stated whether an inmate currently serving a term for a violent felony would be eligible for parole consideration under the initiative. As we have explained, the constitutional text is ambiguous on this point. Although the ballot materials do not directly answer the question, they conveyed to the voters that Proposition 57 would establish "parole consideration for nonviolent offenders" (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56) and would not authorize early parole consideration for "violent offenders" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59).

As the Department observes, the proponents' rebuttal asserted "violent offenders" and "[v]iolent criminals as defined in Penal Code 667.5(c)" would not be eligible for early parole consideration. (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) Moreover, the ballot materials focus on the distinction between inmates convicted of violent felonies and inmates convicted of nonviolent

---

[12] In light of this conclusion, we do not address the Department's position that article I, section 32 compels the approach the Department adopted in its regulations.

felonies. For this reason, the opponents and proponents sparred over the scope of the term nonviolent felony. The proponents asserted violent felonies would be defined by Penal Code section 667.5, subdivision (c) (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59), that the initiative would "[k]eep[] the most dangerous offenders locked up" (*id.*, argument in favor of Prop. 57, p. 58), and that "parole eligibility under Prop. 57 applies, '*only to prisoners convicted of non-violent felonies.*' [*Brown v. Superior Court, supra*, 63 Cal.4th at p. 352.] Violent criminals as defined in Penal Code 667.5(c) are excluded from parole" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59).

The opponents' arguments in the ballot materials did not allege that inmates currently serving a term for a violent felony offense would be eligible for parole consideration under the initiative, or assert the initiative should be rejected for that reason. Instead, the thrust of the opponents' arguments was that the scope of the term "violent felony" was too narrow. (See Voter Information Guide, Gen. Elec., *supra*, argument against Prop. 57, p. 59.) The opponents described a number of offenses — including certain types of rape, sex trafficking, and assault with a deadly weapon — that would be categorized as "nonviolent" under the initiative. (*Id.*, rebuttal to argument in favor of Prop. 57, p. 58.)

In this context, Proposition 57 directed the Department to "adopt regulations in furtherance of [the constitutional] provisions," and to "certify that these regulations protect and enhance public safety." (Art. I, § 32(b).) In doing so, the Department determined that individuals currently serving a term of incarceration for a violent felony should be excluded from early parole consideration, regardless of whether the

24

inmate had also been convicted of a nonviolent felony. (See Cal. Code. Regs., § 3490, subd. (a)(5).) This approach "reasonably interpreted" the Department's mandate to adopt regulations (*Woods*, *supra*, 28 Cal.3d at p. 679), is consistent with the constitutional language and ballot materials, and is "reasonably necessary to effectuate the purpose" of Proposition 57 (Gov. Code, § 11342.2).

The ballot materials support such a conclusion. Underlying the debate between the proponents and opponents of Proposition 57 was the implication that an inmate serving a prison term for a violent felony would be excluded from parole consideration. As the Department puts it, "the singular focus on 'nonviolent felonies' supports the inference that individuals serving time for violent felonies would not be eligible." There would be little reason to debate the meaning and scope of the term violent felony if having a conviction for a nonviolent felony triggered early parole consideration regardless of whether an individual was currently serving a term of incarceration for a violent felony conviction. The Department's decision to craft its regulations in a way that excluded individuals currently serving a term of incarceration for a violent felony is consistent with the distinction between violent and nonviolent felonies emphasized in the ballot materials.

Petitioner's arguments to the contrary are unavailing. First, he notes the materials presented to the voters stated that "persons convicted of nonviolent felonies" would be eligible for parole "upon completion of [a] prison term for their primary offense as defined," but did not indicate that there was an exception that would apply if these individuals were currently serving a term for a violent felony. (See Voter Information Guide, Gen. Elec., *supra*, Official Title and Summary, p. 54.)

This assertion is premised on the assumption that the phrase "any person convicted of a nonviolent felony" in article I, section 32(a)(1) clearly and unambiguously applies to inmates currently serving a term of incarceration for a violent felony conviction — a premise we have already rejected above.

Second, petitioner asserts the ballot materials should not be relied on because they are partisan and "may serve to mislead a voter about an initiative's purpose, intent, and effect." It is true that, as we noted in *Gadlin*, the voters "were explicitly warned in the margins of the voter guide that 'Arguments printed on this page are the opinions of the authors, and have not been checked for accuracy by any official agency.'" (*Gadlin*, *supra*, 10 Cal.5th at pp. 940–941, quoting Voter Information Guide, Gen. Elec., *supra*, pp. 58, 59.) Still, petitioner provides no explanation regarding why any potential partisan bias aids him here. He observes that the opponents emphasized the initiative would apply to "violent criminals." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58, capitalization omitted.) But the opponents' focus on the term "violent criminals," when taken in context, had nothing to do with inmates currently serving a term for a violent felony. Rather, the opponents were concerned with the types of offenses that would be considered nonviolent under the initiative. (See Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58 [asserting inmates convicted of crimes including sex trafficking, assault with a deadly weapon, lewd acts against a 14-year-old, hostage taking, and hate crimes causing injury would be classified as nonviolent].) As noted above, neither the proponents nor the opponents of Proposition 57 expressly addressed the circumstance we consider here. Thus, it cannot be said that the

materials misled the voters with respect to the treatment of inmates currently serving a term of incarceration for a violent felony, or that the Department acted in excess of its authority when crafting the regulation at issue here.

Petitioner next asserts that the initiative informed the voters that the Board of Parole Hearings would guard public safety by evaluating each eligible inmate for parole suitability. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58.) But petitioner does not explain how this would have conveyed to the voters an understanding that inmates currently serving a term for a violent felony would be eligible for early parole consideration.

Further, petitioner's reliance on *Gadlin* with regard to the ballot materials is misplaced. In *Gadlin*, we rejected the Department's position that the ballot materials indicated the voters intended to exclude from early parole consideration inmates convicted of nonviolent offenses requiring registration pursuant to section 290. (*Gadlin*, *supra*, 10 Cal.5th at pp. 939–940.) We noted that the Department relied on "a single line in the proponents' rebuttal argument" in a manner that "overlooks the context of the entire ballot materials provided to the voters." (*Id*. at p. 939.) Here, by contrast, the ballot materials provide much stronger support for the Department's position than the single line on which it relied in *Gadlin*. As described above, the ballot materials consistently contrasted for voters the distinction between violent felonies and nonviolent felonies. This contrast was further underscored by the analysis of the Legislative Analyst, which "assume[d] a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56.)

Unlike the circumstances in *Gadlin*, the Department was well within its discretion to frame its regulations in light of the robust debate captured in the ballot materials.

Finally, petitioner asserts the voters' rejection of Proposition 20 at the 2020 election constitutes evidence that the voters, in passing Proposition 57 in 2016, intended to afford parole consideration to inmates serving terms of imprisonment for both violent and nonviolent felonies. He notes that Proposition 20 would have explicitly excluded such inmates from early parole consideration by adding Penal Code section 3040.3, subdivision (a) to state: "An inmate whose current commitment includes a concurrent, consecutive, or stayed sentence for an offense or allegation defined as violent by subdivision (c) of Section 667.5 or Section 3040.1 shall be deemed a violent offender for purposes of Section 32 of Article I of the Constitution." (Text of Proposed Laws, Gen. Elec. (Nov. 3, 2020) text of Prop. 20, p. 20.) He asserts that voters' rejection of this "opportunity to override the lower court's decision in the current case" indicates that voters intended Proposition 57 to apply to inmates like him who have been convicted of both violent and nonviolent felonies.

Petitioner's argument is entirely unavailing. A failed initiative presented to the voters in 2020 cannot provide evidence of the voters' intent when they cast their ballots in 2016. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 238 ["we cannot speculate that the rejection [of an initiative by the voters] amounted to an implied approval" of a court opinion that would have been effectively overturned by the initiative], citing *Dyna-Med*, *supra*, 43 Cal.3d at p. 1396; *In re Guice*, *supra*, 66 Cal.App.5th at p. 942

["There is simply no way of knowing why voters rejected Proposition 20 four years after they approved Proposition 57"].)

We therefore conclude that the Department acted within its discretion when it promulgated section 3490, subdivision (a)(5) of the California Code of Regulations excluding individuals currently serving a sentence for a violent felony from early parole consideration. This conclusion, however, is not a determination that the Department's regulation is the most plausible of the various interpretations offered. Because the Department is vested with the authority to adopt regulations in this context, we need only conclude that its regulation is a valid exercise of its rulemaking authority.

As to the application of the regulation to this case, petitioner does not contest the Department's determination that he is currently serving a term of incarceration for a violent felony. As described, petitioner was convicted of nine counts of second degree robbery (a violent felony), six counts of receiving stolen property (a nonviolent felony), and various gang enhancements. His only argument before this court is that he should be entitled to early parole consideration because he is a "mixed-offense prisoner whose nonviolent felony offense is his primary offense and whose violent offenses are secondary ones that run consecutive and subordinate to that primary and principal offense." Because petitioner has not contested the Department's determination that he is currently serving a term for a violent felony, and because we have determined that the regulation excluding from early parole consideration inmates who are currently serving a term for a violent felony is a valid exercise of the Department's rulemaking authority under article I, section 32(b), we conclude the Department's denial of

petitioner's request for early parole consideration was permissible.[13]

### III. CONCLUSION

Neither the language of article I, section 32(a)(1) of the California Constitution nor the ballot materials presented to the voters speak directly to whether inmates with nonviolent felony convictions who are currently serving a term for a violent felony must be considered for early parole suitability. Against this backdrop, and the direction in article I, section 32(b) to promulgate regulations, the Department determined that inmates serving a term of incarceration for a violent felony should be excluded from early parole consideration. (Cal. Code Regs., § 3490, subd. (a)(5).) The Department's approach is consistent with a reasonable interpretation of the constitutional language and the ballot materials. We cannot say that the Department abused its rulemaking authority in coming to this conclusion.

---

[13] The concurring opinion in *Douglas* agreed that the petitioner there was "still serving a sentence for a violent felony offense" and thus was ineligible for early parole consideration at the time he sought it. (*Douglas*, *supra*, 62 Cal.App.5th at p. 739 (conc. opn. of Robie, Acting P. J.).) The concurring opinion further asserted that article I, section 32(a)(1)(A) required the court to "break an inmate's sentence into its component parts for the purpose of determining whether that inmate has served his or her primary offense, making the particular sequence in which an inmate serves his or her violent offense a meaningful abstraction." (*Id.* at p. 738.) Because petitioner here does not contest that he is currently serving a term of incarceration for a violent felony, we are not presented with the issue of whether article I, section 32 requires us to break an inmate's sentence into its component parts. We express no view on that issue or on the approach adopted by the concurring opinion in *Douglas*.

The judgment of the Court of Appeal is reversed.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**LEVY, J.***

---

*   Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re MOHAMMAD

S259999

Concurring Opinion by Justice Liu

The Public Safety and Rehabilitation Act of 2016, known as Proposition 57, provides that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1) (article I, section 32(a)(1)).) To implement this provision, the Department of Corrections and Rehabilitation (Department) adopted a regulation that makes ineligible for early parole consideration any inmate who is "currently serving a term of incarceration for a 'violent felony.'" (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5).) For the reasons stated in today's opinion, I agree that this regulation, as written, is a reasonable construction of article I, section 32(a)(1).

Lurking beneath this holding, however, are a number of questions concerning what it means for an inmate with both violent and nonviolent felony convictions to be "currently serving a term of incarceration for a 'violent felony.'" (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5).) But because petitioner Mohammad Mohammad has not contested the Department's determination that he is currently serving a term for a violent felony, we have no occasion here to examine the proper application of the regulation to inmates like Mohammad who are incarcerated for both violent and nonviolent felony offenses. (Maj. opn., *ante*, at pp. 29–30 & fn. 13.)

Mohammad was sentenced to a consecutive term of 29 years for multiple violent (robbery) and nonviolent (receiving

stolen property) offenses. In its administrative review of his request for early parole consideration, the Department determined that his robbery offense (any one of them) " 'makes all of his offenses to be considered violent during this term.' " (*In re Mohammad* (2019) 42 Cal.App.5th 719, 724.) In *In re Reeves* (2005) 35 Cal.4th 765, 772, we said that "[u]nder the Determinate Sentencing Act ([Pen. Code,] § 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' ([*id.*,] § 1170.1, subd. (a)) that merges all terms to be served consecutively . . . ." The Department seems to contemplate that the merger of consecutive terms into a single aggregate term means that an inmate serving a consecutive sentence for violent and nonviolent felony convictions is "currently serving a term of incarceration for a 'violent felony' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5)) throughout the entire duration of the consecutive sentence.

But there is some tension between the Department's view and Proposition 57's definition of "primary offense" to mean "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, *consecutive sentence*, or alternative sentence." (Art. I, § 32(a)(1)(A), italics added.) As Justice Robie explained in *In re Douglas* (2021) 62 Cal.App.5th 726, this language seems to "require[ ] us to break an inmate's sentence into its component parts," notwithstanding the merger rule, in order to determine what term the inmate is currently serving at the time he or she seeks early parole consideration. (*Id.* at p. 738 (conc. opn. of Robie, Acting P. J.); see art. I, § 32(a) ["The following provisions are hereby enacted . . . notwithstanding anything in this article or any other provision of law . . . ."].)

Consider, for example, an inmate serving a consecutive sentence for a robbery offense with a six-year term and a receiving stolen property offense with a three-year term. The robbery offense is the "primary offense" because it carries "the longest term of imprisonment imposed by the court for any offense." (Art. I, § 32(a)(1)(A).) Once the inmate has completed the six-year term for his primary offense of robbery, is he then — for purposes of article I, section 32(a)(1) — currently serving a term for the nonviolent offense of receiving stolen property and thus eligible for early parole consideration, as Justice Robie's view suggests? Or does article I, section 32(a)(1) allow the Department to treat him as currently serving a term for the violent offense throughout the entire nine-year aggregate sentence and find him ineligible for early parole consideration on that basis?

Today's decision does not answer these questions, nor does it address at what point, if any, during Mohammad's consecutive sentence he may become eligible for early parole consideration. These issues await resolution in future cases.


**LIU, J.**


**I Concur:**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Mohammad

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 42 Cal.App.5th 719
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S259999
**Date Filed:** January 3, 2022

---

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  William C. Ryan

---

**Counsel:**

Michael Satris and Heather MacKay, under appointments by the Supreme Court, for Petitioner Mohammad Mohammad.

Xavier Becerra and Rob Bonta, Attorneys General, Michael Mongan, State Solicitor General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Janill L. Richards, Principal Deputy State Solicitor General, Phillip J. Lindsay, Assistant Attorney General, Helen H. Hong, Deputy State Solicitor General, Amanda J. Murray and Charles Chung, Deputy Attorneys General, for Respondent the People.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Respondent the People.

Richard J. Sachs, Deputy District Attorney (San Diego) and Mark Zhaner for California District Attorneys Association as Amicus Curiae on behalf of Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Heather MacKay
P.O. Box 3112
Oakland, CA 94609
(510) 653-7507

Helen H. Hong
Deputy State Solicitor General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9693