Filed 5/1/23  In re Harless CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re BENJAMIN HARLESS on Habeas Corpus. | C095239 |
| | (Super. Ct. No. 21HC00268) |

ORIGINAL PROCEEDING: Petition for Wirt of Habeas Corpus.  Petition denied.

Randy S. Kravis, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Maria G. Chan, Supervising Deputy Attorney General, Krista L. Pollard, Deputy Attorney General, for Respondent.

In this petition for writ of habeas corpus, petitioner Benjamin Harless contends the California Department of Corrections and Rehabilitation[1] (CDCR) erroneously denied his

---

[1] Counsel for respondent filed a return on behalf of the Warden of the Mule Creek State Prison.  In his traverse, Harless treats the return as filed on behalf of the Secretary of

1

request for nonviolent offender parole review under The Public Safety and Rehabilitation Act of 2016 (Proposition 57). Proposition 57 added section 32 to article I of the California Constitution to provide, in relevant part, that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1) (Section 32(a)(1)).)

Although he was convicted of both violent and nonviolent felonies in two separate cases and was sentenced to consecutive indeterminate life terms for those crimes, he asserts that he has completed the full term for his primary offense, a violent felony, by surpassing the minimum 15-year parole eligibility date associated with that conviction, and that currently he is serving *only* his indeterminate term for a nonviolent felony, making him eligible for relief under Section 32(a)(1) and its implementing regulations. Harless argues that CDCR and the trial court erred in aggregating his consecutive violent and nonviolent indeterminate terms for purposes of Section 32(a)(1), rather than breaking his sentence into its component parts to determine whether he was currently serving the nonviolent portion of his sentence.

We conclude that CDCR did not err in denying Harless early parole consideration under Proposition 57 because he has not completed the full term on his primary offense, a violent felony. Because Harless is currently convicted of and serving his indeterminate sentence on his violent murder conviction, he is not eligible for parole consideration under Section 32(a)(1).

---

CDCR since at all relevant times he has been incarcerated by CDCR. We refer to CDCR as the respondent in these proceedings.

## FACTS AND HISTORY OF THE PROCEEDINGS

### A.    *The Underlying Criminal Convictions*

In 1998, Harless pleaded guilty to second degree murder (Pen. Code, § 187; further section references are to the Penal Code unless otherwise indicated), and first degree robbery (§ 211), which are both violent felonies. (§ 667.5, subd. (c)(1) & (c)(9).) He received 15 years to life in prison for the murder plus a concurrent nine years for the robbery.

While in prison, Harless was convicted of committing two additional nonviolent felonies--intimidating a witness by force (§ 136.1) and making criminal threats (§ 422). He was sentenced as a third strike offender to 25 years to life for each offense, with the sentence on the criminal threats conviction stayed under section 654. The Sacramento County Superior Court ran the indeterminate term on the witness intimidation offense "consecutive to the term [Harless was] now serving" for his earlier crimes.

### B.    *Harless's Requests for Early Parole Consideration Under Proposition 57*

Following the electorate's passage of Proposition 57 in November 2016, Harless requested early nonviolent parole consideration under Section 32(a)(1). CDCR denied his request.

In January 2019, Harless submitted a second request for early nonviolent parole consideration, explaining that he had two indeterminate sentences--a 15-year-to-life sentence for a violent felony with a release date of January 4, 2012, and a 25-year-to-life sentence for a nonviolent felony with a release date of October 15, 2032. Harless stated that he had been unable to parole on the violent felony until he finished his sentence on the nonviolent felony, and he requested to know whether he was currently incarcerated for the violent felony or the nonviolent felony.

CDCR responded that because Harless was serving two consecutive life terms for a violent and nonviolent felony, the sentences constituted an aggregate term that qualified

3

as violent. CDCR thus found that Harless was not eligible for early nonviolent parole review because his "current offense, whether controlling or non-controlling, [was] a violent offense pursuant to [Penal Code] section 667.5[, subdivision] (c)."

Harless administratively appealed CDCR's denial of his request for early nonviolent parole consideration. CDCR denied his appeals after finding that he was still currently serving a life term for a violent felony.

## C. Petition for Writ of Habeas Corpus in the Trial Court

Harless filed a petition for a writ of habeas corpus in Amador County Superior Court challenging CDCR's refusal to consider him for early nonviolent parole, which the trial court denied. He then sought habeas relief from this court. We issued an order to show cause returnable in the trial court as to why relief should not be granted. The trial court appointed Harless counsel and ordered briefing from the parties.

In its return in the trial court, CDCR argued that under Penal Code sections 1168 and 3046, Harless had to complete both minimum terms for his consecutive indeterminate sentences before he was eligible to be released on parole for either indeterminate term, and that because he had not completed both minimum terms (a total of 40 years), he had not yet completed his indeterminate term for the murder. Thus, he was still serving a sentence for a violent felony, rendering him ineligible for nonviolent parole consideration under Section 32(a)(1).

Harless filed a traverse, arguing that he was not serving an aggregate consecutive indeterminate sentence, but instead, under Penal Code section 1170.1, subdivision (c), he was serving two separate terms for an in-prison nonviolent felony and an out-of-prison violent felony. Because he had already completed the minimum 15-year term for the violent felony offense, only his nonviolent felony sentence remained making him eligible for relief. The trial court denied Harless's habeas corpus petition in September 2021,

4

finding that regardless of which statutes he was sentenced under, Harless had failed to show that he was not currently serving a term for a violent felony offense.

Harless subsequently filed a habeas corpus petition in this court seeking the same relief as below.[2] After informal briefing, we granted an order to show cause. The Attorney General filed a return, and Harless filed a traverse through appointed counsel.

## DISCUSSION

## I

*Proposition 57's Constitutional and Regulatory Framework*

Voters approved Proposition 57 in 2016. (See generally *In re Gadlin* (2020) 10 Cal.5th 915, 922-923.) As noted, it amended the California Constitution to add Section 32(a)(1), which provides that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1).) Under the newly added constitutional provision, "the full term for the primary offense" is "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (Cal. Const., art. I, § 32, subd. (a)(1)(A).) "Parsing th[e] language [in Section 32(a)(1)], it is obvious the electorate intended to establish a new rule: All nonviolent state prisoners are eligible for parole consideration, and they are eligible when they complete the full term for their primary offense." (*In re Edwards* (2018) 26 Cal.App.5th 1181, 1186.)

---

[2] Although Harless initially argued his trial counsel was ineffective during the habeas proceedings, that CDCR's regulations implementing Proposition 57 were unconstitutional, and that his indeterminate term for his in-prison nonviolent offense was separate from his indeterminate, out-of-prison violent offense under Penal Code section 1170.1, he does not pursue those arguments in his traverse in this court.

Proposition 57 also directed CDCR to adopt regulations to implement Section 32(a)(1) that "protect and enhance public safety." (Cal. Const., art. I, § 32, subd. (b).) As relevant here, the regulations provide that an indeterminately-sentenced nonviolent offender, as defined, is eligible for a parole consideration hearing by the Board of Parole Hearings. (Cal. Code Regs., tit. 15, § 3496, subd. (a).)

For purposes of Section 32(a)(1), the regulations define an "indeterminately-sentenced nonviolent offender" as an indeterminately sentenced inmate who, among other things, is *not* "currently convicted of a 'violent felony' and is sentenced to a term of life with the possibility of parole, including a term for which a violent felony sentence was stayed under Penal Code section 654." (Cal. Code Regs., tit. 15, § 3495, subd. (a)(3) (Regulation 3495(a)(3)). A "violent felony" is "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code" (Cal. Code Regs., tit. 15, § 3495, subd. (c)), and " '[p]rimary offense' " means "the single crime for which any sentencing court imposed the longest term of imprisonment, excluding all enhancements, alternative sentences, and consecutive sentences." (Cal. Code Regs., tit. 15, § 3495, subd. (d).) In determining an inmate's primary offense, "the term of imprisonment for inmates sentenced to a life term under an alternative sentencing scheme for a nonviolent crime" is "the maximum term applicable by statute to the underlying nonviolent offense." (*Ibid.*) The phrase "full term" means "the actual number of days, months, and years for the inmate's primary offense, not including any sentencing credits." (Cal. Code Regs., tit. 15, § 3495, subd. (e).)

Recognizing that our Supreme Court recently upheld an analogous regulation excluding from early parole consideration determinately sentenced inmates who are currently serving a term for a violent felony (see *In re Mohammad* (2022) 12 Cal.5th 518, 541 (*Mohammad*)), Harless does not facially challenge Regulation 3495(a)(3). Rather, he disagrees with CDCR's application of that regulation to preclude him from early parole consideration under Section 32(a)(1).

## II

### *Mixed-Offense Inmates and Early Parole Review under Proposition 57*

Harless contends CDCR and the trial court improperly denied him early parole consideration under Proposition 57 after erroneously concluding that he is still convicted of and serving an indeterminate sentence for a violent felony under Regulation 3495(a)(3). He argues CDCR and the court should have broken his sentence into its component parts to determine which part he was currently serving rather than treat his consecutive indeterminate terms for his violent and nonviolent offenses in the aggregate.

Resolving Harless's contentions requires us to consider how to determine when an inmate "completes" the full term of an indeterminate term under Section 32(a)(1) where the inmate is sentenced to consecutive indeterminate life terms for both violent and nonviolent felonies. That is, is an inmate still currently convicted of a violent felony and serving a term thereon where he has never been found suitable for parole for that violent felony but has surpassed the minimum parole eligibility date for the offense, even though he has not also served the minimum number of years on a consecutive indeterminate term for a nonviolent offense? (See Cal. Code Regs., tit. 15, § 3495, subd. (a)(3).) We turn to that interpretive quandary now.

### A. *Interpretation of a Voter-Enacted Initiative*

The general principles governing interpretation of a statute the Legislature enacts apply equally to initiative measures enacted by the voters. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 978.) When interpreting a voter initiative, our primary task "is to ascertain the intent of the electorate so as to effectuate that intent." (*Id.*, at pp. 978-979, internal citations omitted.)

We first consider the language of the initiative, as the words used "generally provide the most reliable indicator of the voters' intent." (*Arias v. Superior Court, supra*, 46 Cal.4th at p. 979.) We ascribe "to words their ordinary meaning, while taking account

7

of related provisions and the structure of the relevant statutory and constitutional scheme." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933-934 (*California Cannabis Coalition*), internal citations omitted; *In re Edwards, supra,* 26 Cal.App.5th at p. 1189.) If the words are clear and unambiguous and thus not reasonably susceptible of more than one meaning, there is no need to construe an initiative's words. (*Arias*, at p. 979.) But if the provision's intended purpose remains opaque, we may consider extrinsic sources, such as the analysis and arguments contained in the official election materials submitted to the voters. (*California Cannabis Coalition*, at pp. 933-934; *Arias*, at p. 979.)

When construing initiatives, we generally presume electors are aware of existing law. (*California Cannabis Coalition, supra*, 3 Cal.5th at pp. 933-934.) And we apply our independent judgment to the interpretative dispute. (*Ibid.*)

The "rules governing the interpretation of statutes also apply to interpretation of regulations." (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1037.) Where, as here, we are considering CDCR's interpretation of Regulation 3495(a)(3), as opposed to CDCR's quasi-legislative act in drafting the regulation itself, "the level of deference due . . . turns on a legally informed, commonsense assessment of its merit in the context presented." (*Id.* at p. 1035.)

## B. Analysis

Consistent with the foregoing interpretative rules, we begin our analysis with the initiative language. As relevant here, Section 32(a)(1) states that any person convicted of a nonviolent offense and sentenced to state prison shall be eligible for parole consideration "*after completing the full term for his or her primary offense.*" (Cal. Const., art. I, § 32, subd. (a)(1)(A), italics added.)

In this case, Harless's "primary offense" is his murder conviction, a violent offense for which he received 15 years to life. (§ 667.5, subd. (c); Cal. Code Regs., tit.

15, § 3495, subd. (c).) While he technically received a longer term of 25 years to life under the Three Strikes Law for his subsequent nonviolent witness intimidation conviction, Section 32(a)(1) excludes terms imposed under alternative sentencing schemes like the Three Strikes Law when determining an inmate's primary offense. (Cal. Const., art. I, § 32, subd. (a)(1)(A) [defining primary offense as the longest term of imprisonment imposed, *excluding* all enhancements, *alternative sentences*, and consecutive sentences]; *People v. Turner* (2005) 134 Cal.App.4th 1591, 1597 [an indeterminate life term under the Three Strikes Law "is an alternative sentence"].) Thus, for purposes of determining Harless's primary offense under the initiative, Harless's Three Strikes sentence on his nonviolent offense is disregarded and the maximum four-year term applicable by statute for the underlying felony, witness intimidation, is considered. (Cal. Code Regs., tit. 15, § 3495, subd. (d); Pen. Code, § 136.1, subd. (c)(1).) Because 15 years to life is greater than four years, Harless's murder conviction constitutes his "primary offense" for purposes of Section 32(a)(1).

Under the initiative's plain language, Harless must *complete the full term* for his primary offense (murder) before he is eligible for early parole consideration under Section 32(a)(1). The parties' disagree on what constitutes completion of the full term of an indeterminate sentence for mixed-offense inmates who have consecutive indeterminate terms.

Harless contends that for mixed-offense inmates like himself, CDCR must consider the component parts of a sentence to identify what portion the inmate is *currently serving* at the time he or she seeks early nonviolent parole consideration. Breaking his sentence into its component parts here, Harless argues that he is *not* currently convicted of and serving a sentence for his violent felony as he has already completed the indeterminate term for his murder conviction, and is only serving the indeterminate term for his nonviolent felony.

9

In essence, Harless contends that the full term, or "sentence," for an indeterminate term under Section 32(a)(1) and Regulation 3495(a)(3) should be interpreted to mean the *minimum parole eligibility date* for that offense. Applying that logic, Harless argues that he has "effectively 'served' " the full indeterminate term on his murder conviction because he has surpassed the 15-year minimum he must serve before becoming eligible for parole for that offense under Penal Code sections 3040 and 3046. Once he surpassed the minimum parole eligibility date for his murder conviction, his actual release date on parole for that offense became purely an administrative decision for CDCR.

Harless cites the present tense language of both Section 32(a)(1) and Regulation 3495(a)(3) to support his interpretation. He notes Section 32(a)(1) states that "[a]ny person *convicted of* a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration . . .[,]" rather than referring to the past tense of "any person *who was convicted of*" or "any person *who has been convicted of*" a nonviolent felony. (Italics added.) Similarly, Regulation 3495(a)(3) states that an inmate does not qualify as an indeterminately-sentenced nonviolent offender if he "*is currently convicted of*" a violent felony and "*is sentenced*" to a term of life with the possibility of parole. (Italics added.)

This present tense language, according to Harless, suggests the voters intended to focus on the inmate's current conviction status in determining eligibility for early parole under Proposition 57 instead of taking an historical approach to an inmate's convictions. Thus, if his violent felony conviction is an historical fact because he has already completed the full term for that offense, then it would not constitute a continuing disability preventing him from early parole consideration under Section 32(a)(1) because he would no longer be serving a sentence for that violent felony and would only be serving his indeterminate term for his nonviolent offense. He analogizes to *In re Reeves* (2005) 35 Cal.4th 765, 768-769, 777, where our Supreme Court found that Penal Code section 2933.1, subdivision (a)'s 15 percent worktime credit limitation for violent felony

10

convictions applied to an inmate with both violent and nonviolent convictions so long as he was serving the term for the violent offense, even though a concurrently punished nonviolent offense would not by itself have caused the section to apply; but once an inmate completes the term for the violent offense, he becomes prospectively eligible to earn credit at a rate unrestricted by the section because his violent conviction had become an historical fact and was no longer a current conviction.

While it is true that Section 32(a)(1) and Regulation 3495(a)(3) contain present tense language, such language alone does not fully answer the question before us: *how* did the voters intend to calculate *when* a mixed offense inmate has completed the full term for consecutive indeterminate terms under Proposition 57? In other words, when does a violent conviction become an historical fact under the initiative and its implementing regulations?

Harless also relies on Justice Liu's concurrence in our Supreme Court's recent decision in *In re Mohammad, supra*, 12 Cal.5th at pages 542-543 to support his preferred interpretation. As previously noted, the Supreme Court in *Mohammad* ruled that CDCR's regulations implementing Section 32(a)(1) properly excluded from early parole consideration inmates who were convicted of both violent and nonviolent offenses and who were currently serving a sentence for a violent offense. (*Mohammad* at pp. 524, 541.) Because the defendant there was sentenced to consecutive determinate terms for both violent and nonviolent felonies, and he did not dispute that he was currently serving a sentence for a violent felony (*id.* at pp. 525, 541), the Supreme Court found that CDCR properly denied the defendant's request for early parole consideration under the challenged regulation. (*Ibid.*) Our Supreme Court, however, did not consider whether Section 32(a)(1) requires a court to break an inmate's sentence into its component parts as that issue was not squarely before the court given the defendant's concession. (*Id.* at p. 541, fn. 13.)

11

In his concurring opinion, Justice Liu noted that "[l]urking beneath" the court's holding were a "number of questions concerning what it means for an inmate with both violent and nonviolent felony convictions to be 'currently serving a term of incarceration for a "violent felony." ' " (*Mohammad, supra*, 12 Cal.5th at p. 542, Liu, J., conc. opn.) According to Justice Liu, CDCR's interpretation of its regulations "seem[ed] to contemplate that the merger of consecutive [determinate] terms into a single aggregate term means that an inmate serving a consecutive sentence for violent and nonviolent felony convictions is 'currently serving a term of incarceration for a "violent felony" ' [citation] throughout the entire duration of the consecutive sentence." (*Id.* at pp. 542-543; *In re Reeves, supra,* 35 Cal.4th at p. 772 [under the Determinate Sentencing Act (Penal Code § 1170 et seq.), multiple consecutive determinate terms must be combined into a single, aggregate term of imprisonment for all such convictions that merges all terms to be served consecutively].) But Justice Liu recognized that "there is some tension between [CDCR's] view and Proposition 57's definition of 'primary offense' to mean 'the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, *consecutive sentence*, or alternative sentence.' " (*Mohammad,* at p. 543.)

To illustrate this tension, Justice Liu considered a hypothetical inmate serving a consecutive sentence for a robbery offense with a six-year term and a receiving stolen property offense with a three-year term. (*Mohammad, supra*, 12 Cal.5th at p. 543.) Once the inmate has completed the six-year term for his primary offense of robbery was he then, for purposes of Section 32(a)(1), currently serving a term for the nonviolent offense of receiving stolen property and thus eligible for early parole consideration, or does Section 32(a)(1) allow CDCR to treat him as currently serving a term for the violent offense throughout the entire nine-year aggregate sentence and find him ineligible for early parole consideration on that basis? (*Ibid.*)

But Justice Liu's concurrence in *Mohammad* discussed breaking an inmate's sentence into its component parts under Section 32(a)(1) when that inmate was serving an aggregate *determinate* sentence. (*Mohammad, supra*, 12 Cal.5th at p. 543.) That is not the type of sentence Harless has here, and nothing in the *Mohammad* concurrence suggests that a similar analysis would, or should, apply where an inmate is serving consecutive *indeterminate* terms for both violent and nonviolent offenses.

Turning to CDCR's argument, it contends that Harless *is still currently convicted of and serving* the sentence for his violent, primary offense, making him ineligible for early parole consideration under Section 32(a)(1). In reaching this conclusion, CDCR points to authority that existed when the electorate passed Proposition 57 that provides that an indeterminate term only ends when a prisoner is found suitable for parole (see *In re Coleman* (2015) 236 Cal.App.4th 1013, 1020-1021), and that an inmate who has two or more life sentences that are ordered to run consecutively under section 669 may not be paroled until he or she has served the minimum term for each indeterminate sentence. (§ 3046, subds. (a), (b); see also *People v. Franklin* (2016) 63 Cal.4th 261, 273 ["In essence, where two indeterminate sentences run consecutively, a defendant must serve the full minimum term of each before becoming eligible for parole"].)

Applying CDCR's urged interpretation here, Harless has never been found suitable for parole, and he cannot be considered for parole for either his violent or his nonviolent felony until he serves the minimum term for each of his consecutive indeterminate sentences, or 40 years (15 years plus 25 years). Because Harless has not yet served 40 years, he cannot be found suitable for parole on his murder conviction, and, hence, he has not completed the full term for his indeterminate sentence on his violent, primary offense under Proposition 57.

While there is some appeal to each of the parties' respective positions, after considering their competing interpretations, we think CDCR has the better argument. The problem with Harless's interpretation--that merely serving the *minimum* term on his

13

indeterminate violent murder conviction is equivalent to completing the *full term* for that primary offense--disregards the ordinary meaning of the words "complete" and "full" as used in Section 32(a)(1) as well as settled authority concerning the nature of an indeterminate term and the manner in which it ends.

The word "complete" ordinarily means "brought to an end" in relation to a period of time. (Merriam Webster's Dict. <https://www.merriam-webster.com/dictionary/complete> [as of 3/10/23].) The word "full" is commonly understood to mean "containing as much or as many as is possible or normal" and "being at the highest or greatest degree: Maximum." (Merriam Webster's Dict. <https://www.merriam-webster.com/dictionary/full> [as of 3/10/23].) Given these ordinary meanings, it seems unlikely that voters would have understood Section 32(a)(1)'s requirement to complete the full term on a primary offense before being parole eligible under Proposition 57 to mean that an inmate need only serve the *minimum* term on an indeterminate sentence, especially since the word "minimum" is commonly defined as "the least quantity assignable, admissible, or possible." (Merriam Webster's Dict. <https://www.merriam-webster.com/dictionary/minimum> [as of 3/10/23].) In other words, it seems highly incongruous to conclude that the "minimum," or least, number of years on an indeterminate sentence readily equates to an inmate serving the "full," or the highest, number of years applicable for that primary offense.

Furthermore, Harless's interpretation also disregards well established authority that existed at the time the electorate passed Proposition 57 delineating distinct differences between determinate and indeterminate sentences, and how each is completed. We briefly explain that history below.

Prior to July 1977, California law provided for indeterminate sentencing where a trial court would simply sentence a defendant to prison for the term prescribed by law, and an executive parole authority would determine the actual length of a defendant's term, within the statutory maximum and minimum. (*People v. Jefferson* (1999)

14

21 Cal.4th 86, 95 (*Jefferson*).)  Under the pre-1977 sentencing law, the parole authority decided when to release a prisoner on parole, and the period of parole was considered part of the inmate's term of imprisonment.  (*Ibid.*)

That changed on July 1, 1977, when the Legislature replaced California's indeterminate sentencing scheme with a new law, the Determinate Sentencing Act (§ 1170 et seq.) (DSA).  (*Jefferson, supra*, 21 Cal.4th at p. 95.)  Under the DSA, most felonies are now subject, in the alternative, to three precise terms of years (a sentencing triad), and the court selects one of these alternatives when imposing the sentence. (§ 1170; *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078.)  "The offender must serve this entire term, less applicable sentence credits, within prison walls, but then must be released for a further period of supervised parole."  (*In re Dannenberg*, at p. 1078; §§ 1170. subd. (b), 3000, subd. (b).)  " 'Parole is no longer service of the term . . . . "*Term*" *now means the period of actual confinement prior to release on parole.*' " (*Jefferson, supra*, 21 Cal.4th at p. 95.; see also, *id.* at pp. 95-96 ["Unlike the pre-1977 sentencing law, the period of parole is *not* part of a defendant's prison term . . . ."].)  Thus, "under the present law the prison 'term' is the actual time served in prison *before* release on parole, and the day of release on parole marks the *end* of the prison term." (*Ibid.*)

Notwithstanding the DSA's enactment, certain serious offenders, including " 'noncapital' " murderers like Harless, remain subject to indeterminate sentences.  (*In re Dannenberg, supra*, 34 Cal.4th at p. 1078; *Jefferson, supra,* 21 Cal.4th at p. 95.)  "As under prior law, life inmates' actual confinement periods within the statutory range are decided by an executive parole agency."  (*In re Dannenberg*, at p. 1078.)

"These indeterminate sentencees may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement."  (*In re Dannenberg*, at p. 1078; *Jefferson* at pp. 92-93; see also, Pen. Code, § 3046, subds. (a)-(b) [requiring that a defendant sentenced to life imprisonment with the possibility of

15

parole serve at least seven calendar years or a term under any other section of law that establishes a greater minimum period of confinement before becoming eligible for parole].)  For example, second degree murder, Harless's primary offense here, is punishable by an indeterminate prison term of 15 years to life.  (§ 190, subd. (b).)

That Harless has surpassed the minimum parole eligibility date for his murder conviction does not mean he is in fact suitable for parole or that he has reached the end of his indeterminate prison term for his violent offense.  The parole authority could lawfully determine that Harless must serve a certain number of years *beyond* the 15-year minimum for the murder conviction, including up to life in prison.  (§ 3041 [addressing how the parole board makes parole decisions for indeterminate life inmates]; Cal. Code Regs., tit. 15, § 2400 et seq.; *In re Dannenberg, supra*, 34 Cal.4th at pp. 1079-1080 ["The regulations governing murderers serving indeterminate life sentences have long provided that determination of an individual inmate's *suitability* for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a)"].)  A decision to incarcerate Harless more than the 15-year minimum would be entirely lawful.  (*In re Coleman, supra*, 236 Cal.App.4th at pp. 1017, 1020 [after serving 22 years in prison on a 15-years-to-life indeterminate sentence, the parole authority found the defendant suitable for parole].)

We presume the voters were aware of this well-established authority when they passed Proposition 57.  (*California Cannabis Coalition, supra*, 3 Cal.5th at pp. 933-934.)  Thus, in adopting Section 32(a)(1)'s precise language--that a person convicted of a nonviolent felony offense and sentenced to prison is eligible for nonviolent parole consideration under Proposition 57 *after completing the full term* for his or her primary offense--voters are presumed to know *when* an inmate completes a "full term" for an indeterminate sentence under existing law.  This is especially so considering the official ballot materials for Proposition 57, which generally explained how an indeterminate term worked, expressly stated that if the Board of Parole Hearings decided not to release an

16

individual with an indeterminate term from prison after he or she had served the minimum number of years required for an indeterminate term, the board would conduct a subsequent parole hearing in the future to determine when the indeterminately sentenced inmate would be released and his or her term would effectively end. (See Voter Information Guide, Gen. Elec. (Nov. 8, 2016) analysis of Prop. 57 by Legis. Analyst, p. 54.)

Had the electorate wanted to define the "full term" with respect to indeterminate sentences as the *minimum* number of years an inmate must serve before becoming parole eligible, it easily could have done so. It did not. And we see nothing in the plain language of Section 32(a)(1) that compels such an interpretation. In interpreting Section 32(a)(1), we cannot insert language into the constitutional provision that the voters omitted. (*Doe v. City of Los* Angeles (2007) 42 Cal.4th 531, 545 [reviewing court's task is to simply ascertain and declare what is in a relevant statute, not to insert what has been omitted, or to omit what has been inserted; a court may not rewrite the statute to conform to an assumed intent which does not appear from its language].)

We acknowledge that adopting CDCR's interpretation appears to create some tension with Section 32(a)(1)'s command to disregard a consecutive sentence when determining the "full term of the primary offense" under Proposition 57. (Cal. Const., art. I, § 32, subd. (a)(1)(A).) But we think that command is more logically understood to refer to the long-standing rule under the DSA that consecutive determinate terms are merged into a single, aggregate sentence as Justice Liu referenced in his *Mohammad* concurrence. (*Mohammad, supra*, 12 Cal.5th at pp. 542-543.) Indeed, the consecutive nature of Harless's nonviolent offense is not necessarily what is preventing him from paroling on his violent offense and thereby completing the full term for that primary offense.

Settled law provides that Harless could not be paroled on his violent felony until the parole authority determines that he is suitable for parole and thereafter sets a base

17

term that he must serve after considering a sentencing matrix for similar crimes. (*In re Coleman, supra*, 236 Cal.App.4th at p. 1020.) Hypothetically, even if Harless were deemed eligible for parole today on his murder conviction, the parole authority might very well determine he is still too dangerous to release, i.e., that he is *not suitable* for parole, or that even if he is suitable for parole, the appropriate base term for his murder offense is 30 or 40 or 50 years. Under either of those circumstances, Harless could not be released on parole for his violent felony conviction, and he would still be serving a sentence thereon.

CDCR's conclusion that Harless is currently convicted of a violent felony and serving a sentence thereon within the meaning of Regulation 3495(a)(3) and Section 32(a)(1) is reasonable given Section 32(a)(1)'s plain language and the legal landscape concerning indeterminate sentences and how an inmate completes a full indeterminate term that existed when voters passed Proposition 57.

Finally, we reject Harless's argument that CDCR should be equitably estopped from asserting that he is still currently serving his indeterminate sentence on his violent, primary offense because certain prison classification forms that listed various release dates under the indeterminate sentencing law allegedly misled him into believing that he had completed his indeterminate term for the murder offense and was now serving his indeterminate term for his in-prison witness intimidation offense.[3] " ' "[T]he doctrine of

---

[3] An October 2014 form lists Harless's current offenses, including his life with parole term for murder, and shows that Harless will be eligible for parole on December 4, 2035. It also shows that while Harless had release dates of January 4, 2012, and January 4, 2037, the release dates were described as under the "Indeterminate Sentence Law (ISL)." (*Ibid.*) A January 2021 form, entitled "ISL Release Date Calculation" shows his minimum eligible parole dates, and that a violent offender credit earning limitation applied to his nonviolent indeterminate term, which could only be so if Harless was currently serving a sentence for a violent offense, his murder conviction. (See *In re Reeves, supra*, 35 Cal.4th at p. 775.)

equitable estoppel is founded on concepts of equity and fair dealing." ' " (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1262.)  The primary essence of an equitable estoppel is that the party to be estopped has, by false words or conduct, led a person to do that which he would not otherwise have done, and as a result, the person has been injured.  (*Steinhart v. Count of Los Angeles* (2010) 47 Cal.4th 1298, 1315.)  Ordinarily, the doctrine will not be applied against a governmental body except in unusual circumstances when necessary to avoid a grave injustice and when the result is not against a strong public policy.  (*Ibid.*)  A court will not equitably estoppel the government if to do so would effectively nullify a strong rule of public policy, which has been adopted for the benefit of the public.  (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493.)  Given our conclusion that CDCR properly interpreted its regulations and Section 32(a)(1) to preclude Harless from early parole consideration under Proposition 57, we find no basis to apply the doctrine of equitable estoppel here.

## DISPOSITION

The petition for writ of habeas corpus is denied.

 

_____

HULL, J.

We concur:

_____

ROBIE, Acting P.J.

_____

EARL, J.

19