Filed 2/26/25  P. v. Aguero CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051042 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1518880) |
| v. | |
| DUANE ANTHONY AGUERO, | |
| Defendant and Appellant. | |

Charged with murder in Santa Clara County before the Legislature narrowed the crime's definition in Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant Duane Aguero settled on the day of trial by pleading no contest to voluntary manslaughter.  When Aguero later petitioned for resentencing under what is now Penal Code section 1172.6,[1] the trial court denied the petition at the prima facie stage because Aguero's manslaughter plea followed Senate Bill 1437's effective date.  But to support his petition, Aguero had presented uncontroverted evidence that the Santa Clara County District Attorney had routinely and successfully challenged the constitutionality of Senate Bill 1437's amendments of sections 188 and 189 in a series of other cases—as recently as the eve of Aguero's scheduled trial.  Aguero's evidence also addressed how the early

---

[1] Unspecified statutory references are to the Penal Code.

successes of the district attorney's constitutional challenge influenced the parties' settlement negotiations.

Aguero's appeal asks us to determine whether the record of conviction conclusively negates the possibility that he could have been convicted of murder under the law as it existed before Senate Bill 1437. Persuaded by the undisputed evidence that judges of the court in which Aguero was set to be tried were continuing to apply abrogated law at the time Aguero entered his plea, we will reverse.

## I.    BACKGROUND[2]

### A.    *The Plea*

In 2017, following a preliminary hearing, the Santa Clara County District Attorney filed an information charging Aguero with the murder (§ 187) of Christopher Maxwell Wrenn. In the information, the district attorney alleged that a principal in the commission of the murder personally used a handgun. (§ 12022.53, subds. (b) & (e)(1).) The information further alleged that Aguero had a prior strike conviction for willful discharge of a firearm with gross negligence (§ 246.3). (§§ 667, subds. (b)–(i), 1170.12.)

Effective January 1, 2019, while Aguero's case was still pending, the Legislature's passage of Senate Bill 1437 narrowed the felony murder rule and eliminated the natural and probable consequences theory of murder. (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 amended the Penal Code effective January 1, 2019, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § l, subd. (f), p. 6674.) Section 188, subdivision (a)(3) was amended to specify that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime," except as to

---

[2] We take the procedural history of this case from uncontroverted evidence supplied by the parties in litigating Aguero's resentencing petition at the prima facie stage.

2

felony murder as redefined in section 189.[3]  Section 189, subdivision (e) was amended to provide that "[a] participant in the perpetration or attempted perpetration of [an enumerated felony] in which a death occurs is liable for murder only if" the person was "the actual killer," an aider and abettor of first degree murder who acted with intent to kill, or a "major participant in the underlying felony" who acted with implied malice— "reckless indifference to human life."  Senate Bill 1437 also established " 'a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine' " to petition for vacatur of these convictions and resentencing. (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865.)

Given the new law, Aguero's counsel attempted to negotiate a plea bargain for robbery rather than murder.  But the district attorney maintained that Senate Bill 1437 was unconstitutional—both in its prospective redefinition of malice and felony murder under sections 188 and 189 and in its provisions for retroactive relief via resentencing in cases already final—and in an unbroken series of cases persuaded various Santa Clara County judges to so rule.  In the summer of 2019, after at least three judges had declined to follow Senate Bill 1437, Aguero's counsel suggested a meeting with the assigned deputy district attorney and deputy's supervisor but was told that settlement discussions would be pointless unless Aguero could be persuaded to "accept a voluntary manslaughter offer of 11 years," the aggravated term.[4]  (§ 193, subd. (a).)

Defense counsel advised Aguero that at trial he could be facing an indeterminate term with a minimum parole eligibility date potentially decades later.  Although Aguero

---

[3] Before Senate Bill 1437 took effect, " 'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1184.)

[4] The sentencing triad for second degree robbery, in comparison, is two, three, or five years.  (§ 213, subd. (a)(2).)

through counsel agreed to accept an 11-year voluntary manslaughter plea bargain, the 11-year resolution was "never consummated[,] [t]he case was . . . set for trial, and the District Attorney's offer had increased to 17 years."

By the day of trial in October 2019, the district attorney had successfully argued that Senate Bill 1437 was unconstitutional in several more cases, extending the number to 11 cases.[5] The most recent of these unconstitutionality rulings came on the eve of trial, by a judge who had not previously ruled on the issue. No appellate court had yet decided the issue. On the day of trial, Aguero agreed to plead no contest to a new count of voluntary manslaughter (§ 192, subd. (a)) in lieu of murder and to admit a serious felony enhancement (§ 667, subd. (a)(1)) and weapons enhancement (§ 12022, subd. (b)(1)) in lieu of the strike allegation, for a total term of 17 years. Otherwise, the district attorney confirmed Aguero's exposure at trial would be an indeterminate term of 31 years to life.

It was undisputed that Aguero was not the actual killer, and the trial court acknowledged this in taking his plea. The court thanked "counsel for the hard work that they put into . . . what I believe is a settlement under some difficult circumstances" and Aguero "for [his] willingness to work hard, think about the case, and come to this compromise." The court added, "Mr. Aguero, for what it's worth, I think you've made a wise decision." Aguero's counsel asked Aguero if he understood "that by pleading to the voluntary manslaughter, this will take [him] out of the scheme of the new law called . . . SB[]1437." Aguero confirmed that he understood. Aguero then pleaded no contest to a count of voluntary manslaughter and admitted both the serious felony enhancement and the weapon enhancement. The weapon was a "[f]lail."

Several weeks after Aguero entered his plea to voluntary manslaughter, a divided panel of Division One of the Fourth District Court of Appeal rejected the People's

---

[5] One of the judges who had deemed Senate Bill 1437 unconstitutional later declined in an unrelated case to instruct a jury on the natural and probable consequences doctrine, albeit without addressing the prosecution's unconstitutionality claim.

arguments that Senate Bill 1437 was unconstitutional. (See *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 [finding Sen. Bill 1437 and its resentencing provisions did not offend separation of powers or the rights of crime victims], review den. Feb. 19, 2020, S259835 (*Lamoureux*); *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 274 [finding Sen. Bill 1437 did not unconstitutionally amend Prop. 7 (as approved by voters, Gen. Elec. (Nov. 7, 1978) (Proposition 7)) or Prop. 115 (as approved by voters, Primary Elec. (June 5, 1990) (Proposition 115))], review den. Feb. 19, 2020, S259700 (*Gooden*).) But as numerous appellate courts would go on to hold, the plain language of Senate Bill 1437's resentencing provisions omitted defendants who pleaded guilty or no contest to manslaughter—by definition an unlawful killing "without malice" (§ 192)—to avoid trial for murder. (See, e.g., *People v. Sanchez* (2020) 48 Cal.App.5th 914, 916 [holding that former § 1170.95 resentencing provisions were inapplicable to defendants convicted of voluntary manslaughter]; *People v. Flores* (2020) 44 Cal.App.5th 985, 989 [accord]; *People v. Turner* (2020) 45 Cal.App.5th 428, 435–439 [same].)

In January 2020, the trial court sentenced Aguero to the stipulated term (now reduced to 16 years by striking the one-year punishment for the flail): an aggravated term of 11 years for the voluntary manslaughter consecutive to a five-year serious felony enhancement. The remaining counts and allegations were dismissed.

**B.     *Senate Bill 775 and the Petition for Resentencing***

Responding to judicial decisions holding that Senate Bill 1437 excluded persons convicted of attempted murder or manslaughter from eligibility for resentencing, the Legislature enacted Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022. (*People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) The bill "[c]larifie[d]"[6] that resentencing relief was available to "persons who were convicted of

---

[6] "While it may seem obvious that persons who have pled or been convicted of manslaughter or attempted murder at trial under a felony murder or natural and probable consequences theory should be entitled to the same relief as persons convicted of

5

attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine" just as to "those . . . convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a), p. 6971.) In enacting Senate Bill 775, the Legislature recognized that "a petitioner may have pled guilty or no contest to voluntary manslaughter in order to forego the risk of being convicted of murder or attempted murder under one of these subsequently abrogated theories of liability." (Assem. Com. on Public Safety, Analysis of Sen. Bill 775 (2021–2022 Reg. Sess.) as amended July 6, 2021, p. 7.)

Under Senate Bill 775, those eligible for resentencing include persons convicted of manslaughter so long as each of the following three conditions apply: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Soon after the Legislature in Senate Bill 775 amended the resentencing provisions of what is now section 1172.6, Aguero filed a form petition for resentencing alleging that the statutory requirements for resentencing had been met.

The district attorney opposed the petition, arguing that the timing of Aguero's manslaughter plea made him categorically ineligible for resentencing. Aguero responded

___

serious offenses of first and second degree murder[,] some courts have ruled that they are not." (Sen. Com. on Public Safety, Analysis of Sen. Bill 775 (2021–2022 Reg. Sess.) as amended Feb. 19, 2021, p. 7.)

6

with a brief, supporting declarations, and exhibits noting that when he entered his plea agreement, the district attorney had "persuaded *every Superior Court Judge in* [Santa Clara County] who ruled on the issue . . . that [*Senate Bill*] *1437 was unconstitutional.*"[7] (The judge hearing Aguero's resentencing petition had been the first of the Santa Clara County judges identified by Aguero to deem Senate Bill 1437 unconstitutional, in an order denying another defendant's pretrial motion under section 995.)

Aguero and his trial counsel explained in their declarations how the succession of superior court rulings had influenced the parties' plea negotiations. Aguero described the jail being abuzz as early as February 2019 with chatter about the first ruling; his attorney duly advised him that the district attorney's early success in challenging Senate Bill 1437 left him similarly vulnerable to "the same strict liability felony-murder law as when the robbery occurred in 2015." Aguero represented that had Senate Bill 1437's constitutionality been established, he would have simply gone to trial on murder if the parties remained unable to negotiate a robbery settlement.

The trial court denied Aguero's petition as failing to state a prima facie case for relief. The court reasoned that when Aguero entered his plea, he "could not [then] have been convicted of murder under any law other than the law that was put into effect by [Senate Bill] 1437." Aguero timely appealed.

## II.    DISCUSSION

At the prima facie stage, section 1172.6, subdivision (b)(1)(a) requires that Aguero allege that he is eligible for relief based on all the requirements set forth in subdivision (a). Because he has done so, denial without issuance of an order to show cause is proper only if the record of conviction conclusively refutes his allegation.

---

[7] To better quantify the district attorney's early successes in the trial court, Aguero made a Public Records Act request for records of all cases in which the district attorney had obtained rulings on the constitutionality of Senate Bill 1437. The county, however, would produce only records anonymized to omit defendant identifiers and case numbers.

(*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*); *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " '[I]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, at p. 460.) We review de novo both the interpretation of section 1172.6 and the trial court's determination whether a defendant has made a prima facie case for relief. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1023 [questions of statutory interpretation are reviewed de novo]; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 [applying de novo standard of review to determination on whether prima facie showing for relief has been made under former § 1170.95].)

The Attorney General disputes the sufficiency of Aguero's prima facie showing, contending "the date of appellant's plea establishes that he cannot demonstrate that he 'could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019' " (italics omitted), as section 1172.6, subdivision (a)(3) requires. (See also *People v. Lezama* (2024) 101 Cal.App.5th 583, 590 (*Lezama*).) Under this theory, Senate Bill 1437's January 1, 2019 effective date cleanly demarcated when the prosecution lost any ability to proceed under an imputed malice theory.[8]

But the Attorney General's argument presumes the Legislature in section 1172.6 intended the most restrictive view of whether the prosecution would have been "allowed . . . to proceed" under now-abrogated imputed malice theories (§ 1172.6, subd. (a)(1)), whether a defendant who accepted a manslaughter plea "could have been convicted of murder" at trial (§ 1172.6, subd. (a)(2)), and whether it is the "changes to [s]ection 188 or 189" that are the basis for the requested relief (§ 1172.6, subd. (a)(3)).

---

[8] We note that the Attorney General's argument also potentially implicates the eligibility requirement of section 1172.6, subdivision (a)(1) that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed" under now-invalid theories of imputed malice. Subdivision (a)(1) is arguably ambiguous as to whether the potential for proceeding under a now-invalid murder theory is to be assessed as of the charging date or the adjudication date.

This narrow reading of the statute presumes a defendant's perfect insight into how appellate courts would ultimately rule on disputed points of constitutional law and how the Legislature would later choose to clarify its meaning. As a matter of statutory interpretation, the Attorney General's argument contravenes Senate Bill 775's clear design of broadening relief. As a matter of practice, the Attorney General's theory is belied by the record Aguero has assembled. We find that the trial court erred by denying Aguero's petition for resentencing based solely on the record of conviction without regard to the undisputed evidence that the district attorney and the judges of that court considered Senate Bill 1437 a nullity.

**A.** *Section 1172.6 and Aguero's Prima Facie Showing*

The plain language of a statute controls, but when the statute is ambiguous, we look to " 'extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227; see also *Lezama*, *supra*, 101 Cal.App.5th at p. 585 [noting the ambiguity of § 1172.6, subd. (a)(3)].) Even where the language is otherwise plain, a statute may still be ambiguous " 'at least as applied to the facts of [a particular] case.' " (*In re Mohammad* (2022) 12 Cal.5th 518, 532.) And "[u]ltimately, we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute." (*Allen*, at p. 227.) As *Lezama*, *supra*, 101 Cal.App.5th 583 and *People v. Gallegos* (2024) 105 Cal.App.5th 434 (*Gallegos*) recognize, nothing in the text of section 1172.6, subdivision (a) plainly forecloses relief on this record. (*Lezama*, at pp. 588–589 [noting ambiguity of § 1172.6, subd. (a)(3)]; *Gallegos*, at p. 442 [accord].) The legislative history and apparent intent of Senate Bill 775 invite it.

Because manslaughter is the unlawful killing of a person without malice (§ 192), a manslaughter conviction should in theory be unaffected by changes to the definition of malice. By enacting Senate Bill 775, the Legislature intended to extend relief to those

9

" 'who [were] convicted of manslaughter when the prosecution was allowed to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine.' " (*Lezama*, *supra*, 101 Cal.App.5th at p. 589; Sen. Com. on Appropriations, Analysis of Sen. Bill 775 (2021–2022 Reg. Sess.) as amended Feb. 19, 2021, p. 3 [accord].) As the Legislature implicitly recognized in Senate Bill 775, manslaughter as a lesser offense than murder commonly represents a pragmatic compromise—of risk and benefit to the parties in plea bargaining, or of verdicts in the jury deliberation room.[9]

Given the ambiguity in the statute as applied to defendants convicted of manslaughter, *Lezama* concluded that "consistent statements of legislative intent reveal the Legislature's aim in the manslaughter context was to make relief available to defendants who were convicted by plea or trial at a time when the prosecution could have pursued a murder charge, but the only way of doing so would have been a now invalid theory of imputed malice." (*Lezama*, *supra*, 101 Cal.App.5th at p. 590.) Although *Lezama* focused on the petitioner's inadequate showing under subdivision (a)(3) of section 1172.6, we consider the statute as a whole. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.) We examine whether Aguero's petition and supporting evidence state a prima facie claim that "[o]nly after the Legislature amended section 189 would the defendant have had an argument for ineligibility for murder. In other words, it is indeed 'because of changes to' section 189 made by Senate Bill 1437 that the defendant could

---

[9] Even where the trier of fact returned a manslaughter verdict—acquitting on the greater charge of malice murder (see *People v. Aranda* (2019) 6 Cal.5th 1077 [conviction of lesser included offense deemed an implied acquittal and thus the jury is generally required to expressly acquit on the greater offense before returning verdict on lesser offense])—section 1172.6, subdivision (a)(2) does not make the defendant ineligible for relief. (Cf. *People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 11 [affording no preclusive effect to inconsistent verdict because " 'juries [may] acquit out of compassion or compromise or because of " 'their assumption of a power which they had no right to exercise, but to which they were disposed through lenity' " ' "].)

10

not today be convicted of murder." (See *People v. Strong* (2022) 13 Cal.5th 698, 712, citing § 1172.6, subd. (a)(3).)

The Attorney General argues that Aguero "is ineligible for resentencing relief because the prosecution could not have proceeded under former murder law had the case gone to trial." To be sure, in light of later appellate decisions, the district attorney *should not* have proceeded under former murder law had the case gone to trial, and if he did so, the trial court should not have permitted it. (See, e.g., *Lamoureux*, *supra*, 42 Cal.App.5th at p. 246, review den. [finding Sen. Bill 1437 and its resentencing provisions did not offend separation of powers or the rights of crime victims]; *Gooden*, *supra*, 42 Cal.App.5th at p. 274, review den. [finding Sen. Bill 1437 did not unconstitutionally amend Prop. 7 or Prop. 115].) Thus without any other evidence to support a credible likelihood of conviction under legislatively abrogated theories of imputed malice, we would agree with the Attorney General that those convicted of manslaughter post-Senate Bill 1437 would typically be ineligible for relief, because their convictions would not have been obtained in reliance on former law. (*Lezama*, *supra*, 101 Cal.App.5th at p. 590.)

But given the undisputed evidence supporting Aguero's allegations, the prosecution was in fact proceeding under former murder law: Effective date notwithstanding, neither the district attorney nor the trial court appeared to be *giving effect* to Senate Bill 1437's amendments to sections 188 and 189. Based on Aguero's petition, had he proceeded to trial, he would have needed to prepare for the demonstrable risk of conviction under former law, and with it an indeterminate prison term of more than 30 years to life. And at Aguero's plea hearing in 2019, the trial court agreed that the "video [of the murder] establishes, really, without a doubt, that it was one of the co-participants who actually killed the victim in this case." Although there remain valid theories of murder for the prosecution to pursue, the record of conviction does not conclusively negate Aguero's contention that the *only* way for the prosecutor to have

11

obtained a murder conviction in his case was through an imputed malice theory. (*Lezama*, *supra*, 101 Cal.App.5th at p. 590.) Thus, reviewing the allegations in Aguero's petition and his supporting evidence, we find that he has stated a prima facie case for relief: (1) the district attorney filed an information that allowed prosecution under theories of imputed malice (§ 1172.6, subd. (a)(1))—and then continued to pursue such theories despite Senate Bill 1437; (2) Aguero was convicted of manslaughter in lieu of a trial at which he could have been convicted of murder (§ 1172.6, subd. (a)(2)), and (3) he can no longer be convicted of murder due to changes made to sections 188 and 189 effective January 1, 2019 (§ 1172.6, subd. (a)(3)).

The Attorney General dismisses as "entirely speculative" Aguero's argument that the pattern of rulings in the trial court made it likely that the court would have instructed the jury according to former law and instead faults Aguero and his counsel for "misunderstanding that [Senate Bill] 1437 did not apply to manslaughter convictions."[10] This argument disregards both Aguero's evidence and the Legislature's own recognition in Senate Bill 775 that Senate Bill 1437 was not being interpreted as broadly as it intended. Aguero and his counsel correctly understood that the district attorney and an unbroken succession of judges before whom he could reasonably expect to be tried considered Senate Bill 1437 unconstitutional and were instead continuing to apply former law.

The Attorney General also protests that Aguero's argument "presume[s] that error would have occurred in this case, which contravenes Evidence Code section 664 and is at odds with the maxims of appellate review that all intendments and presumptions are taken in favor of the judgment." We are not, however, reviewing the judgment on

---

[10] As we have explained (see *ante* at p. 5 and fn. 6), what the Attorney General faults as Aguero's "misunderstanding" correctly anticipated appellate court rulings before the Legislature acted to "[c]larif[y]" this very point. (Stats. 2021, ch. 551, § 1, subd. (a), p. 6971.)

Aguero's plea but the order dismissing his facially sufficient resentencing petition at the prima facie stage. Accordingly, we look to whether the record of conviction conclusively refuted Aguero's showing, not whether Aguero conclusively refuted the possibility that what motivated his plea was his remaining exposure even under section 189 as amended.[11] The Attorney General's argument also ignores the considerable legal uncertainty in which Aguero has affirmatively shown he was obliged to negotiate his case—the undisputed evidence that the district attorney fueled that uncertainty by challenging Senate Bill 1437 and then leveraged a string of early successes in the superior court in negotiating Aguero's plea to voluntary manslaughter.

In short, the Attorney General would have us strictly hold Aguero to an effective date that the district attorney and trial court themselves had declined to observe. We see no justification for imputing to Aguero both (1) the legal sophistication to know that the position taken by the district attorney actually prosecuting him and several of the judges before whom he might be tried would later be found wrong and (2) the overweening confidence to disregard that powerful inducement to compromise. The calculus underlying such a compromise is based on the objective circumstances actually known to the parties at the time, not on perfect clairvoyance about how the law might someday be settled. Although Aguero entered his plea to voluntary manslaughter after the effective date of Senate Bill 1437, the undisputed circumstances of his plea establish that the purpose of his plea was "to forego the risk of being convicted of murder . . . under one of the[] . . . abrogated theories of liability." (Assem. Com. on Public Safety, Analysis of Sen. Bill 775, *supra*, as amended July 6, 2021, p. 7.) The alternative to Aguero's plea was a trial at which the district attorney would continue to assert that Senate Bill 1437

---

[11] Even assuming that Evidence Code section 664 extends beyond the regular performance of ministerial duties to presume a trial court's error-free interpretation of new law, any such presumption has been rebutted by Aguero's evidence, including the trial court's multiple rulings on the constitutionality of Senate Bill 1437.

was unconstitutional, when every superior court judge to have considered this issue had ruled for the district attorney.

In support of his petition, Aguero's trial counsel declared that she hoped Senate Bill 1437 would facilitate settlement for robbery in lieu of a homicide offense, but that "the constitutionality of [Senate Bill] 1437 was being litigated in the courts." Aguero declared that in February 2019, he learned that "at least two judges in Santa Clara County had declared [Senate Bill 1437] unconstitutional"; his trial counsel warned him that if Senate Bill 1437 were deemed unconstitutional, the district attorney could elect to try him under a natural and probable consequences theory. In lieu of a trial, Aguero opted to settle for manslaughter and what was originally to be a stipulated sentence of 11 years, until over time the offer increased to 17 years. As reflected in exhibits to his petition for resentencing, judges of the court where he would be tried decided in 11 cases—all prior to his entry of plea—that Senate Bill 1437 was unconstitutional.

We recognize that the unbroken series of superior court decisions in Santa Clara County would not have been binding on a judge presiding at Aguero's trial. (*Regents of University of California v. Superior Court* (1990) 225 Cal.App.3d 972, 976; *Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 ["a written trial court ruling has no precedential value"].) But nothing in the record supplies any assurance that none of the judges who had already ruled would preside at his trial, or that a different judge would not be influenced by the apparent unanimity in favor of the district attorney's constitutional challenge. And for resentencing petitions under section 1172.6, "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) It is only if the record of conviction contains facts *conclusively* refuting the petitioner's allegations that the petition may be denied at the prima facie stage. (*Curiel*, *supra*, 15 Cal.5th at p. 465.)

Taken as a whole, Aguero's petition alleged that the Santa Clara County District Attorney "did not accept the constitutionality of the [Senate Bill 1437]" and that a

growing consensus of judges in the court where Aguero would be tried considered the new law unconstitutional.  Assuming the truth of these allegations and the evidence supporting them, we are persuaded that Aguero has met the low threshold for a prima facie case under section 1172.6.

In other words, the petition and record of conviction do not conclusively negate Aguero's eligibility for relief as a matter of law because he has adequately alleged that the only theory of murder liability pursued by the prosecution when he was convicted was imputed malice under former law and that he could not presently be convicted of murder under the law as amended.  (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)

On this record, we cannot distinguish the denial of Aguero's petition at the prima facie stage from "that obvious inequity in the law" that prompted the Legislature to make "people who are serving a sentence of manslaughter or attempted murder that were prosecuted under a felony murder theory or a natural and probable consequences theory . . . able to have their sentences recalled under the same standards as people who have been convicted of . . . murder."  (Sen. Com. on Public Safety, Analysis of Sen. Bill 775, *supra*, as amended Feb. 19, 2021, p. 7; see also *Lezama*, *supra*, 101 Cal.App.5th at p. 589.)

B.     **Lezama** *and* **Gallegos**

Although *Lezama* and *Gallegos* posit that the effective date of Senate Bill 1437 made a later-convicted petitioner ineligible for resentencing as a matter of law (*Lezama*, *supra*, 101 Cal.App.5th at p. 590; *Gallegos*, *supra*, 105 Cal.App.5th at p. 443), our sister courts in those cases had no need to address the materiality of a petitioner's evidence that the relevant prosecuting agency persisted in pursuing murder convictions under former law and that the trial court at the time of the plea was consistently permitting it to do so. We agree with *Lezama* and *Gallegos* that we examine the legal landscape as it existed at the time of Aguero's plea to determine whether he could have been prosecuted under former law.  But what distinguishes Aguero's petition is the undisputed record of (1) the

15

district attorney's concerted resistance to Senate Bill 1437, (2) the superior court's consistent acceptance of the district attorney's constitutional claims, and (3) the undisputed evidence that both influenced the parties' plea negotiations and Aguero's decision to accept a manslaughter conviction.

As in *Lezama* and *Gallegos*, Aguero pleaded to voluntary manslaughter in 2019, *after* Senate Bill 1437 had amended the law of murder. But the *Lezama* and the *Gallegos* petitioners, unlike Aguero here, made no showing that they *could have been* convicted of murder under an imputed malice theory post-Senate Bill 1437 based on factors such as the prosecuting office's position on the constitutionality of the law or the superior court's disposition of the issue in similar cases. When the People opposed the petition because his plea was entered after Senate Bill 1437 came into effect, the *Lezama* petitioner merely "disagreed with" the People's position and "maintained he met all three eligibility requirements" set forth under the statute. (*Lezama*, *supra*, 101 Cal.App.5th at p. 587.) And the *Gallegos* petitioner sought to distinguish himself by arguing he was eligible because he faced a separate (but later dismissed) count of attempted murder. (*Gallegos*, *supra*, 105 Cal.App.5th at p. 444.) In other words, there appears to have been no argument made by either the *Lezama* or *Gallegos* petitioners concerning the ability of the prosecution to pursue an imputed malice theory at trial *despite* the passage of the new law.[12]

---

[12] The Attorney General's reliance on *People v. Reyes* (2023) 97 Cal.App.5th 292, 298 is similarly misplaced. First, the prosecution in *Reyes* filed the charging information against the petitioner in 2020 when the imputed malice theories of murder had already been abrogated, which the reviewing court found to refute the petitioner's allegation under section 1172.6, subdivision (a)(1). (*Reyes*, at p. 298.) And like the *Lezama* and *Gallegos* petitioners, the *Reyes* petitioner neither pleaded facts nor presented independent evidence showing the relevant prosecuting agency continued to pursue an imputed malice theory beyond the effective date of Senate Bill 1437.

16

We therefore conclude that unlike the *Lezama* and *Gallegos* petitioners, Aguero has met the " 'very low' " bar to establish he is eligible for relief under this criterion. (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  As we have explained, Aguero's evidence of the circumstances of his plea prevents the bare record of conviction from conclusively negating his contention that the *only* way for the prosecutor to have obtained a murder conviction in his case was through an imputed malice theory.  (Cf. *Lezama*, *supra*, 101 Cal.App.5th at p. 590.)  On this record, we cannot consider it conclusively shown that Aguero falls outside the class of defendants that Senate Bill 775 was intended to benefit—those who accepted a manslaughter plea rather than face trial for murder on a theory of imputed malice.  (Sen. Com. on Public Safety, Analysis of Sen. Bill 775, *supra*, as amended Feb. 19, 2021, p. 3; Sen. Com. on Appropriations, Analysis of Sen. Bill 775, *supra*, as amended Feb. 19, 2021, p. 3 [accord].)

**C.**      ***Availability of Other Relief and Conclusion***

When denying Aguero's petition for resentencing, the trial judge suggested that Aguero could have petitioned for writ of habeas corpus, presumably based on ineffective assistance of counsel, and that he "had or has a remedy to argue that his plea . . . was improper, inappropriate, or illegal" through means other than filing a section 1172.6 petition.  We understand the trial court's implication to be that Aguero could have sought relief through other avenues.  But it was in denying a section 995 motion that this same judge had launched the series of local rulings declaring Senate Bill 1437 unconstitutional.  Moreover, the quantum of proof under section 995 is limited to "reasonable or probable cause" (*ibid.*):  Even under section 189 as amended, the prosecution's evidence of major participation or reckless indifference to human life might meet that standard and yet fall short of overcoming reasonable doubt at trial or an evidentiary hearing under section 1172.6, subdivision (d)(3).  And as Aguero has observed, *nothing* in his trial counsel's performance was deficient:  She understood the new law, she attempted to secure its benefits for Aguero short of trial by negotiating a robbery disposition, and

17

when she was unable to overcome the district attorney's resistance, she duly informed Aguero of the district attorney's litigation position and the office's successes before multiple judges of the court in which Aguero was to be tried. Finally, in reviewing the order denying Aguero's petition for resentencing at the prima facie stage, our inquiry is not whether Aguero could have sought relief under Senate Bill 1437 through other means but whether he has stated a prima facie case for relief under section 1172.6.

We express no opinion on whether Aguero is indeed entitled to be resentenced. Nor do we suggest that the Legislature intended to permit *all* defendants convicted of lesser offenses like manslaughter vacatur of their convictions and resentencing, or that defendants convicted when the constitutionality of Senate Bill 1437 ceased to be in doubt might be entitled to an evidentiary hearing under section 1172.6, subdivision (d)(3). Resentencing relief ultimately hinges on whether a defendant's conviction could only have been obtained on now-abrogated theories of imputed malice murder, whether it be the natural and probable consequences doctrine or an invalid theory of felony murder.

### III. DISPOSITION

The order denying the petition for resentencing is reversed. The trial court is directed to issue an order to show cause and to hold an evidentiary hearing under Penal Code section 1172.6, subdivision (d)(3).

18

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

BROMBERG, J.

*People v. Aguero*
H051042